## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES DOHERTY and MICHAEL J. NOEL, individually and as representatives on behalf of a class of similarly situated persons,<br><br>             Plaintiffs<br><br>    v.<br><br>BRISTOL-MYERS SQUIBB CO., BRISTOL-MYERS SQUIBB CO. PENSION COMMITTEE, BRISTOL-MYERS SQUIBB COMPENSATION AND MANAGEMENT DEVELOPMENT COMMITTEE, and STATE STREET GLOBAL ADVISORS TRUST CO.,<br><br>             Defendants. | Case No. 1:24-cv-06628-MMG<br><br>**ORAL ARGUMENT REQUESTED** |

## STATE STREET GLOBAL ADVISORS TRUST COMPANY'S MEMORANDUM IN SUPPORT OF ITS <u>MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.    SSGA Trust Co. and Its Role With Respect to The BMS Plan. ........................... 2

    II.    Athene. .................................................................................................................. 3

    III.    Plaintiffs' Allegations. .......................................................................................... 3

ARGUMENT ........................................................................................................................ 4

    I.    Plaintiffs Lack Standing......................................................................................... 4

    II.    Count I Does Not State a Claim Against SSGA Trust Co.................................... 4

        A.    No Pleaded Facts Plausibly Allege that SSGA Trust Co. Acted
            Disloyally. ................................................................................................. 4

            1.    Plaintiffs' Allegations Concerning SSGA Trust Co.'s
                Relationship With Athene Do Not Raise An Inference of
                Disloyalty. .................................................................................... 5

            2.    Plaintiffs' Allegations Concerning SSGA's Ownership of
                BMS Stock Do Not Raise An Inference of Disloyalty. ................. 8

        B.    Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co.
            Employed an Imprudent Process. ............................................................. 10

            1.    Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is
                Flawed. ....................................................................................... 11

            2.    Athene's Supposed Credit Risk. .................................................. 14

            3.    Athene's Connection to Private Equity And Supposed
                Financial Risks............................................................................ 15

            4.    Other Purported "Red Flags" Regarding Athene........................ 18

            5.    Plaintiffs Fail to Allege That SSGA Trust Co. Could Have
                Selected One of Plaintiffs' Preferred Annuity Providers............. 19

        C.    Plaintiffs' Claim of Co-Fiduciary Liability Fails..................................... 21

    III.    Plaintiffs' Prohibited Transaction Claims (Counts VI, VII, and VIII) Fail
        as a Matter of Law. .............................................................................................. 21

        A.    Plaintiffs Do Not State a Claim Under ERISA Section 406(a). ............. 21

            1.    Plaintiffs Fail to State a Claim that SSGA Trust Co. Caused
                a Prohibited Transaction Between the Plan and BMS. ................ 21

            2.    Plaintiffs Fail to State a Claim that SSGA Trust Co. Caused
                a Prohibited Transaction Between the Plan and Athene. ............. 23

            3.    Any Transaction Under Section 406(a) Would Be Exempt
                by Statutory and Administrative Exemptions. ............................ 24

B.      Plaintiffs Do Not State a Claim Under ERISA Section 406(b). .............. 25

CONCLUSION..................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................8, 10

*In re Beacon Assocs. Litig.,*
  745 F. Supp. 2d 386 (S.D.N.Y. 2010).................................................5, 16

*Bloom v. AllianceBernstein L.P.,*
  725 F. Supp. 3d 325 (S.D.N.Y. 2024).............................................. *passim*

*Bussian v. RJR Nabisco, Inc.,*
  223 F.3d 286 (5th Cir. 2000) .............................................................11, 12

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984).................................................................................12

*Citibank, N.A. v. Aralpa Holdings Ltd. Partnership,*
  2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023)........................................17

*Cunningham v. Cornell Univ.,*
  2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017)....................................9, 25

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.,*
  88 F.4th 602 (5th Cir. 2023) ...................................................................24

*Dist. 65, UAW v. Harper & Row, Publishers, Inc.,*
  576 F. Supp. 1468 (S.D.N.Y. 1983)........................................................22

*Ferguson v. Ruane Cunniff & Goldfarb Inc.,*
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019).........................................10

*Hughes v. Nw. Univ.,*
  595 U.S. 170 (2022).................................................................................11

*Hughes v. Nw. Univ.,*
  63 F.4th 615 (7th Cir. 2023) ..............................................................19, 20

*Leber v. Citigroup,*
  2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..........................................25

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024).................................................................................12

*Matney v. Barrick Gold of N. Am.,*

80 F.4th 1136 (10th Cir. 2023) ...................................................................................19

*In re Nokia ERISA Litig.*,
2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011).........................................................21

*Patrico v. Voya Fin., Inc.*,
2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) ............................................. 23-24, 25

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)..............................................5, 6, 7, 14

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)................................................................... *passim*

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023)....................................................................18

*In re RCN Litig.*,
2006 WL 1273834 (D.N.J. Mar. 22, 2006)......................................................15, 16

*Riley v. Murdock*,
83 F.3d 415 (4th Cir. 1996) ...................................................................................11

*Robainas v. Metro. Life Ins. Co.*,
2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ...........................................................12

*Sacerdote v. Cammack Larhette Advisors, LLC*,
2024 WL 4882173 (S.D.N.Y. Nov. 22, 2024).........................................................9

*Sacerdote v. N.Y. Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018).....................................................................20

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) ............................................................................19, 20

*Skidmore v. Swift & Co.*,
323 U. S. 134 (1944)...............................................................................................12

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)................................................................................................12

*Waller v. Blue Cross of Cal.*,
32 F.3d 1337 (9th Cir. 1994) ...........................................................................22, 23

**Statutes and Regulations**

29 U.S.C. § 1104(a)(1)(A) .........................................................................................4

29 U.S.C. § 1104(a)(1)(B) ................................................................4, 10, 20

29 U.S.C. § 1106(a) ................................................................21, 23, 24

29 U.S.C. § 1106(b) ................................................................25

29 U.S.C. § 1108(b)(2) ................................................................24

29 U.S.C. § 1108(b)(9) ................................................................22

29 U.S.C. § 1108(b)(17) ................................................................24

29 U.S.C. § 1108(b)(17)(A) ................................................................23

29 U.S.C. § 1132(a)(2) ................................................................4

29 U.S.C. § 1132(a)(3) ................................................................4

29 U.S.C. § 1341(b)(3)(A)(i) ................................................................22

29 U.S.C. § 1344(d) ................................................................22

29 C.F.R. § 2509.95-1(c) ................................................................11, 12, 15

29 C.F.R. § 2509.95-1 ................................................................10

Iowa Code § 521E ................................................................13

N.Y. Ins. Law § 1322 ................................................................13

**Other Authorities**

49 Fed. Reg. 9494 (Mar. 13, 1984) ................................................................24

# INTRODUCTION

As Co-Defendant BMS[1] explains in its brief, Plaintiffs' challenge to the widespread and legal use of pension risk transfers ("PRTs") fails to state a claim, and the Consolidated Complaint ("Complaint" or "CC") also should be dismissed for lack of standing because Plaintiffs have incurred no injury and have not identified any promised retirement benefit they have not received. Defendant State Street Global Advisors Trust Company ("SSGA Trust Co.")[2] joins BMS's arguments, which dispose of the case entirely.

SSGA Trust Co. submits this brief to present additional arguments that also compel dismissal as to it. In particular, the Complaint contains no plausible allegation that SSGA Trust Co., a professional independent fiduciary that has selected numerous annuity providers in the context of other PRTs, was so conflicted by the holdings of funds it manages for others that it acted disloyally in selecting Athene—one of the nation's largest PRT providers—for BMS's PRT. Nor does the Complaint plausibly allege that SSGA Trust Co.'s fiduciary process for selecting Athene was imprudent; indeed, the Complaint is entirely silent as to SSGA Trust Co.'s process. Finally, the Complaint fails to allege any non-exempt prohibited transaction under ERISA.

For these and the other reasons described more fully below, and for those set forth in BMS's brief, the Complaint against SSGA Trust Co. must be dismissed.

---

[1] Throughout this brief, "BMS" refers collectively to Defendants Bristol-Myers Squibb Co., Bristol-Myers Squibb Co. Pension Committee, and Bristol-Myers Squibb Compensation and Management Development Committee.

[2] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (which in turn is a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities that comprises State Street Global Advisors ("SSGA"), the global investment management business of State Street Corporation.

# BACKGROUND

## I. SSGA Trust Co. and Its Role With Respect to The BMS Plan.

State Street Corporation ("State Street Corp.") is a global financial services firm and bank holding company headquartered in Boston.[3]  Its investment management business, SSGA, provides asset management, research, and advisory services to corporations, mutual funds, and other institutional investors.[4]  As of December 31, 2019, SSGA had approximately $3.12 trillion in assets under management ("AUM").[5]  SSGA is not the beneficial owner of these assets. Rather, these assets are held in trust for the benefit of its clients and/or the investment funds it advises and those funds' beneficial owners.[6]  Moreover, these funds are primarily invested pursuant to passively-managed index strategies.  Of the $2 trillion of these assets invested in equities, over $1.9 trillion (95%) were invested in passively managed strategies.[7]

SSGA Trust Co.'s Independent Fiduciary Services Team ("IFS")—a unit within SSGA— separately offers independent fiduciary services.  Through IFS, SSGA Trust Co. is a leading provider of independent fiduciary services for PRTs and has served as independent fiduciary for over eighty PRTs, including some of the largest ever.[8]

---

[3] Ex. 1, State Street Corp., 2019 Form 10-K at 4 (Feb. 20, 2020) ("2019 State Street Corp. 10-K").  Unless otherwise indicated, all "Ex. __" cites are to the exhibits attached to the accompanying Declaration of Benjamin Reilly.

[4] *Id.* at 5, 68.

[5] *Id.* at 5.

[6] For example, the SPDR Series Trust is a Massachusetts business trust and an open-end management investment company.  Ex. 4, SPDR Series Trust Form N-CSR at 234 (June 30, 2023).  It consists of 83 SSGA-advised investment funds, including the SPDR Russell 1000 Low Volatility Focus ETF, the SPDR Russell 1000 Momentum Focus ETF, and the SPDR Russell 1000 Yield Focus ETF, each of which tracks components of the Russell 1000 index discussed at p. 7 *infra*.  *Id.* at 6, 9, 12.  The SPDR Series Trust holds securities in trust for the beneficial interest of the 83 funds established under the trust.  *Id.* at 234.

[7] Ex. 1, 2019 State Street Corp. 10-K at 5, 72.

[8] Ex. 28, *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today*, State Street Global Advisors (Oct. 31, 2024) at 4, https://tinyurl.com/Ex-28-STATE-STREET.

## II.    Athene.

Athene Annuity and Life Co. and Athene Annuity & Life Assurance Company of New York (collectively "Athene") are insurance and retirement services companies that, among other things, issues retirement savings products such as annuities.[9]  Athene is subject to the same insurance requirements and oversight by regulators as other insurers.  At the time of the challenged transaction (the "BMS PRT"), Athene had already engaged in PRT transactions worth a total of $4.1 billion.  CC ¶ 227.  Athene is a recognized leader in the PRT field; in 2023, it ranked first in pension annuity sales ($10.4 billion).[10]  Athene has completed 47 PRT transactions totaling $51.8 billion and covering over 560,000 plan participants.[11]

As BMS explains in its arguments, which SSGA Trust Co. joins, Athene is well-capitalized, is highly rated by credit rating agencies, and its annuities are protected against default by multiple layers of protection, each of which would have to fail before Plaintiffs could lose a penny in benefits.  *See* BMS MTD at § I.B.

## III.    Plaintiffs' Allegations.

Relevant to SSGA Trust Co., Plaintiffs Charles Doherty and Michael J. Noel ("Plaintiffs") allege that SSGA Trust Co. breached its fiduciary duties of loyalty and prudence, and engaged in prohibited transactions, by selecting Athene as the annuity provider for the BMS PRT.  CC ¶¶ 260–271; 295–307.  Plaintiffs do not allege a single fact concerning the process utilized by SSGA Trust Co. in making that selection.  Rather, they assert that SSGA Trust Co. was conflicted in its selection of Athene because SSGA today has corporate relationships with Athene (and its parent, Apollo) and because SSGA supposedly had an incentive to save BMS

---

[9] Ex. 7, Athene Holding Ltd., 2023 Form 10-K at 10 (Feb. 27, 2024) ("2023 Athene 10-K").

[10] Ex. 26, Distribution Channels, Athene, https://tinyurl.com/5yyhvh72 (last visited Dec. 5, 2024).

[11] Ex. 7, 2023 Athene 10-K at 16.

money by virtue of it being a large shareholder of BMS's.  *See id.* ¶¶ 225–241.

ARGUMENT[12]

## I.    <u>Plaintiffs Lack Standing.</u>

SSGA Trust Co. joins BMS's motion to dismiss on the ground that Plaintiffs lack

standing to bring this action because they have incurred no injury.[13]  BMS MTD § I.  Plaintiffs

also lack statutory standing to sue under 29 U.S.C. §§ 1132(a)(2) and (a)(3).  *Id.* § II.

## II.    <u>Count I Does Not State a Claim Against SSGA Trust Co.</u>

Count I alleges that SSGA Trust Co. violated ERISA §§ 404(a)(1)(A) (duty of loyalty)

and 404(a)(1)(B) (duty of prudence), 29 U.S.C. §§ 1104(a)(1)(A), (B).  CC ¶¶ 260–269.

However, the Complaint contains no well-pleaded allegations plausibly alleging that SSGA Trust

Co. breached either of these duties in selecting Athene and therefore should be dismissed.

### A.    **No Pleaded Facts Plausibly Allege that SSGA Trust Co. Acted Disloyally.**

The Court should dismiss Plaintiffs' disloyalty claim because Plaintiffs fail to allege any

facts plausibly raising an inference of disloyalty on the part of SSGA Trust Co., a professional

independent fiduciary.  Plaintiffs' claim of SSGA Trust Co.'s disloyalty due to its relationships

with BMS and Athene, CC ¶¶ 225–241, rests on nothing more than conclusory, speculative, and,

in many cases, illogical allegations.  The fact that State Street Corp., one of the world's largest

financial firms, has unrelated business relationships with both Athene (among other insurers) and

BMS (among other plan sponsors)—some of which post-date the BMS PRT by years—is

insufficient to create a preclusive conflict of interest.

---

[12] SSGA Trust Co. adopts the legal standard articulated by BMS in its memorandum ("BMS MTD").

[13] Relatedly, each of Plaintiffs' claims fails because Plaintiffs have not shown that they have suffered any losses from the alleged breaches of fiduciary duties.  *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 730 (2d Cir. 2013) ("To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant['s fiduciary breach] caused a loss to the plan. . .").

4

To plead a duty of loyalty claim under ERISA, "a plaintiff must allege plausible facts supporting an inference that the defendant acted for the purpose of providing benefits to itself or someone else." *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 336 (S.D.N.Y. 2024) (internal quotation and citations omitted) (dismissing claims). To withstand a motion to dismiss, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully." *PBGC*, 712 F.3d at 718. Rather, a plaintiff must "allege specific facts that directly demonstrate [the defendants] acted for a purpose other than providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan." *Bloom*, 725 F. Supp. 3d at 337.

Plaintiffs rest their threadbare disloyalty claim on the mere allegations that SSGA Trust Co. had "apparent financial incentives to recommend Athene." CC ¶ 229. But courts routinely hold that such "incidental" benefits—if they are benefits at all—arising from "a common business relationship" do not support an inference of disloyalty. *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019); *see also Bloom*, 725 F. Supp. 3d at 337 (collecting cases). Such is the case here.

### 1. Plaintiffs' Allegations Concerning SSGA Trust Co.'s Relationship With Athene Do Not Raise An Inference of Disloyalty.

Plaintiffs assert that SSGA Trust Co. was conflicted because (i) "State Street offers a financial product backed by Athene"; (ii) "Apollo and State Street have [in 2024] announced their intention to jointly launch a[n] . . . exchanged-traded fund ("ETF")"; and (iii) "State Street [has been] one of the largest shareholders of Apollo" since 2020. CC ¶¶ 230–232. These allegations are insufficient to raise an inference of disloyalty because "the Court must focus on facts as they existed at the time of the challenged transaction," *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 418 (S.D.N.Y. 2010), and Plaintiffs do not allege that any of these relationships

existed at the time of the BMS PRT in 2019.  But even setting aside this temporal disconnect, allegations of such an incidental benefit cannot sustain an inference of disloyalty.

Plaintiffs assert that "State Street is . . . one of the largest shareholders of Apollo" and therefore "had a self-interest in increasing the value of its equity position," which was supposedly served by selecting Athene.  CC ¶¶ 232–236.  This fact is not only meaningless but also misleading because SSGA is not the beneficial owner of the Apollo shares, which it holds on behalf of its clients and the investment funds it advises.  *See supra* n.6.  Thus, any change in Apollo's value inures to the benefit or detriment of SSGA's clients, not to SSGA, and SSGA's nominal "holding" of these shares cannot sustain an inference of disloyalty on the part of SSGA Trust Co.  Indeed, even where a plaintiff alleges that a defendant received a direct benefit from its fiduciary actions, which Plaintiffs have not done here, courts still require a plaintiff to "allege specific facts that directly demonstrate [the defendants] acted for a purpose other than providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan."  *Bloom*, 725 F. Supp. 3d at 337.  Courts have "rejected on numerous occasions" the attempt to draw an "inference of disloyalty" under ERISA when "an employee retirement plan offered proprietary investment options," *id.*, which is a far less attenuated benefit than what Plaintiffs allege here.

Similar to the facts here, in *Patterson*, participants in Morgan Stanley's plan sued the company for offering "poorly performing" BlackRock funds as plan investment options, alleging "that Defendants breached their duty of loyalty to the Plan because their decision to offer the [funds] was motivated by a desire to foster a business relationship with Blackrock."  2019 WL 4934834, at *2, 14.  The court rejected this theory, explaining that "the mere fact that Morgan Stanley might incidentally benefit from its relationship with BlackRock is not enough to raise an

inference of disloyalty by Defendants" and that "Plaintiffs do not actually allege any facts to suggest that Defendants' business relationship with BlackRock was contingent on Defendants offering BlackRock's [funds] in the Plan." *Id.* at *14. "Put simply," the court concluded, "the mere existence of a business relationship between two large financial institutions is not enough to lift Plaintiffs' otherwise deficient disloyalty claims above the bar set by *Twombly*." *Id.* The same is true here of Plaintiffs' allegations concerning SSGA's ownership of Apollo stock and the joint effort with Apollo to launch an ETF five years after the challenged PRT. CC ¶¶ 230–232, 234–236.[14]

Moreover, even the SSGA-advised funds' holdings of Apollo stock years after the BMS PRT say nothing about favoritism by SSGA. Over 95% of SSGA's $2 trillion in equity assets under management are held in index funds, as to which the portfolio manager (SSGA) invests in the securities comprising an underlying index. *See supra* p. 2 & n.6. Apollo has been a component of the Russell 1000 Index since 2020.[15] Accordingly, the fact that SSGA has been among the top ten institutional shareholders of Apollo since then, CC ¶ 232, is not plausibly a result of favoritism by SSGA, but largely the result of the fact that SSGA is managing assets that are designed to track the Russell 1000 Index, which is generated by a third party (Russell). *See, e.g.*, *supra* n.6. Plaintiffs' theory—that the SSGA funds' predominantly passive investments in Apollo influenced the decisions of SSGA Trust Co.'s independent fiduciary business—makes no

---

[14] Plaintiffs' allegations SSGA Trust Co. was conflicted because SSGA earns revenue from providing custodial services for Athene's insurance products, CC ¶ 223, fails for the same reason—Plaintiffs do not allege that such business was "contingent" on, or otherwise related to, SSGA Trust Co. selecting Athene for the BMS PRT. *Patterson*, 2019 WL 4934834, at *14. Moreover, that theory is implausible for the additional reason that no SSGA legal entities, including SSGA Trust Co., provide custody services. *See* Ex. 1, State Street Corp. 2019 Form 10-K at 4–5 (Feb 20, 2020) (State Street Corp. provides custody services through its Investment Servicing business, which is separate and distinct from its Investment Management business, of which SSGA is a part).

[15] Ex. 27, *Apollo and Athene to Merge in All-Stock Transaction*, Apollo Glob. Mgmt. Inc. (Mar. 8, 2021), https://tinyurl.com/3fr6ab64 (Apollo "secur[ed] inclusion on the Russell 1000 index in June of 2020").

sense.  Such conclusory and nonsensical allegations do not raise an inference of disloyalty.  *See Bloom*, 725 F. Supp. 3d at 337; *PBGC*, 712 F.3d at 718 ("allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct").

Finally, Plaintiffs also allege that, since 2018, SSGA Trust Co. "has recommended Athene for no fewer than ten" PRTs, and suggests that this too is evidence of disloyalty.  CC ¶¶ 228–229.  Not so.  The fact that SSGA Trust Co. has recommended Athene in a fraction of the more than 80 PRTs it has closed does not reflect any sort of favoritism.

Ultimately, Plaintiffs plead no facts showing that SSGA Trust Co.'s relationships with Athene are sufficient to create a plausible inference of a conflict of interest, which requires dismissal of their disloyalty claim against SSGA Trust Co.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (pleading "facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility'").

### 2.    Plaintiffs' Allegations Concerning SSGA's Ownership of BMS Stock Do Not Raise An Inference of Disloyalty.

Next, Plaintiffs assert that SSGA Trust Co.'s relationship with BMS also compromised its independence.  This assertion is based entirely on the allegation that "[b]ecause State Street held . . . significant positions in [BMS stock]" it "had an interest in favoring . . . a cheaper annuity provider, like Athene" because any cost savings would "redound to the benefit of shareholders."  CC ¶¶ 235–237.  As with Plaintiffs' allegations concerning SSGA Trust Co.'s relationship with Athene, these allegations do not raise a plausible inference of disloyalty.

Plaintiffs' theory suffers the same fatal flaw as their theory regarding SSGA's ownership of Apollo shares.  SSGA, as a nominal holder of BMS stock on behalf of its clients, had no

economic interest in the share price of BMS's stock.[16]  *See supra* p. 2 & n.6.  Moreover,

Plaintiffs' theory is further debunked by SSGA Trust Co.'s selection of providers other than

Athene for numerous other PRTs, including for plan sponsors in which SSGA held much larger

stakes.  For example, in 2022, SSGA Trust Co. served as the independent fiduciary in IBM's $16

billion partial PRT transaction—the largest PRT that year.[17]  SSGA's SEC filings reflect that it

held over $6 billion in IBM stock in 2022.[18]  Under Plaintiffs' faulty theory, then, SSGA Trust

Co. would have been even more motivated to select Athene (the allegedly "lowest-cost

provider") for the IBM PRT, a company in which it held a much larger investment.[19]  But it did

not do so; SSGA Trust Co. selected two other annuity providers for IBM's plan.[20]

Courts consistently reject ERISA loyalty claims, like here, premised on defendants'

supposed disloyal motives without some factual basis to plausibly draw a conclusion that an

action was disloyally motivated: "Absent factual allegations supporting 'purposeful action' by a

fiduciary to benefit a third party, there can be no liability for breach of loyalty."  *Sacerdote v.*

*Cammack Larhette Advisors, LLC*, 2024 WL 4882173, at *5 (S.D.N.Y. Nov. 22, 2024); *accord*

*Bloom*, 725 F. Supp. 3d at 337 (dismissing loyalty claim based on "conclusory allegation" of

defendants' self-interest when complaint did "not allege specific facts" in support); *Cunningham*

*v. Cornell Univ.*, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (dismissing loyalty claims)*,*

---

[16] In any event, SSGA is a large nominal holder of BMS stock for the same reason it is a large nominal holder of Apollo stock: its passive index investing strategies.  *See supra* p. 2 & n.6.  BMS is a component of the S&P 500 index, which SSGA tracks with multiple funds.  *See, e.g.*, Ex. 5, State Street Glob. Advisors 2024 SPDR® S&P 500® ETF Trust Prospectus, at 1–2, 36 (Jan. 26, 2024) (noting fund's strategy is to track the S&P 500 and holds BMS stock).

[17] *See* n.10 *supra*; Ex. 29, Hailey Ross & Jason Woleben, *Pension risk transfer activity hits record high in* 2022, S&P Glob. (Mar. 31, 2023), https://tinyurl.com/tnkr3cdv.

[18] Ex. 3, State Street Corp. Form 13F (Sept. 30, 2022).

[19] Ex. 2, State Street Corp. Form 13F (Sept. 30, 2019) (reflecting $3.5 billion holding of BMS stock).

[20] Ex. 6, International Business Machines Corp. Form 8-K at 3 (Sept. 13, 2022).

*aff'd on other grounds*, 86 F.4th 961 (2d Cir. 2023), *cert granted*, 2024 WL 4394127 (Oct. 4, 2024).

Accordingly, Plaintiffs' disloyalty claim against SSGA Trust Co. should be dismissed. *Iqbal*, 556 U.S. at 678 (pleading "facts that are 'merely consistent with' a defendant's liability . . . stops short of . . . plausibility").

### B.      Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process.

Plaintiffs also allege that SSGA Trust Co. imprudently selected Athene.  CC ¶¶ 260–271. They assert that, "[b]ased on objective criteria and relative to other providers in the market," SSGA Trust Co. failed to select the "safest annuity available," which, they claim, is required under the DOL's Interpretive Bulletin 95-1 ("IB 95-1"), 29 C.F.R. § 2509.95-1.  CC ¶¶ 263, 266. But Plaintiffs' sparse, conclusory allegations do not plausibly raise an inference of imprudence. To the contrary, SSGA Trust Co.'s choice was squarely consistent with decisions made by other fiduciaries in like circumstances, *see supra* p. 3, and raises no inference of imprudence.

ERISA's prudence obligation requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  The statutory standard is process-based: it "focuses on a fiduciary's conduct" in reaching a decision, "not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular" transaction.  *PBGC*, 712 F.3d at 716.  A fiduciary's actions are "judge[d] . . . based upon information available to the fiduciary at the time of each investment decision."  *Id.*  And "where a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to

reasonably infer the process was flawed." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) (granting dismissal) (citing *PBGC*, 712 F.3d at 718).

Here, the Complaint does not contain a single allegation concerning SSGA Trust Co.'s process in selecting Athene.  Instead, Plaintiffs rely on a litany of speculative and conclusory allegations about the supposed riskiness of Athene, a leading annuity provider chosen by many other fiduciaries, which they say supports an inference that its selection by SSGA Trust Co.— itself, through IFS, a leading, professional independent fiduciary—could not have been the product of a prudent decision-making process.  These allegations are insufficient to raise an inference of imprudence because they fail to "allege[] *nonconclusory* factual content raising a *plausible* inference of misconduct" in SSGA Trust Co.'s process in selecting Athene.  *PBGC*, 712 F.3d at 718.

### 1.    Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is Flawed.

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT.  *See* 29 C.F.R. § 2509.95-1(c). Tellingly, no federal court has adopted that standard.  Moreover, Plaintiffs do not allege that SSGA Trust Co. failed to consider the IB 95-1 (or other) factors.  Instead, Plaintiffs focus on language in IB 95-1 that, they claim, requires fiduciaries "to select the 'safest annuity provider available.'"  CC ¶ 24.  They are incorrect.

***First***, "no federal court has adopted" the "'safest available' standard urged by the DOL." *Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished).  Indeed, the DOL's interpretation is unmoored from ERISA's text, which contemplates a wide "range of reasonable judgments a fiduciary may make" for any given decision.  *Hughes v. Nw. Univ.*, 595 U.S. 170,

11

177 (2022).  DOL's prescriptive, outcome-oriented "safest annuity available" rule contravenes

ERISA's flexible, process-based standard, which is why courts have rejected it as inconsistent

with the statutory text.  *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297–298 (5th Cir. 2000).

This Court should not be the first to adopt it.[21]

     ***Second***, Plaintiffs' claims fail even under the DOL's non-binding bulletin.  Plaintiffs

assert that, under the DOL's "safest annuity" standard, there can be only one permissible choice

of annuity provider.  *See* CC ¶¶ 86, 263.  The DOL says no such thing.  To the contrary, the

DOL states in IB 95-1 that, "[a] fiduciary may conclude, after conducting an appropriate search,

that *more than one* annuity provider is able to offer the safest annuity available."  29 C.F.R.

§ 2509.95-1(c) (emphasis added).  In other words, a fiduciary may take into account all of the

relevant factors and conclude that more than one insurer would be prudent.[22]

     Moreover, Plaintiffs' allegations about Athene's unsuitability are largely untethered to

the actual IB 95-1 factors.  They allege that unnamed "industry professionals" focus on four

"prevalent factors" in assessing an insurer's risk profile, CC ¶ 114, none of which appear in IB

95-1.  And where Plaintiffs challenge Athene's suitability based on factors that do appear in the

Bulletin, their allegations are implausible.  For example, Plaintiffs challenge the adequacy of the

"level of [Athene's] capital and surplus" (IB 95-1 factor 3) by claiming that Athene had a low

surplus-to-liability ratio as of 2023.  CC ¶¶ 115–120.  But Plaintiffs do not allege that surplus-to-

---

[21] Even before *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts declined to afford the DOL's interpretation deference under *Chevron U. S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837 (1984).  *See, e.g.*, *Bussian*, 223 F.3d at 297.  And because it contravenes ERISA's text and is internally inconsistent, DOL's interpretation "lack[s] the persuasive force" for deference under *Skidmore v. Swift & Co.*, 323 U. S. 134 (1944).  *See generally Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013).

[22] Plaintiffs themselves appear to recognize as much, pointing to at least two other "traditional annuity providers" in the PRT market, and three that would otherwise be "clear candidates" for "safest annuity available."  CC ¶¶ 90, 152.  Indeed, other plaintiffs—represented by the same counsel as Plaintiffs here—have sued SSGA Trust Co. in this District for utilizing one of Plaintiffs' alleged "clear candidates", Prudential.  *See* Class Action Complaint, *Dempsey, et al v. Verizon Communications Inc., et al*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024).

liability ratio is a commonly used industry metric.  Rather, an insurer's risk-based capital ratio (RBC) is the primary measure by which insurance regulators evaluate the capital adequacy of insurers, *see Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015), and Athene's is strong.  Its judicially noticeable SEC filings show $21.8 billion in regulatory capital and a RBC ratio of 412%[23], double the amount required by the National Association of Insurance Commissioners (NAIC)[24] model statute adopted by Iowa and New York[25], and exceeding the RBC ratios of other large pension annuity providers.[26]  Similarly, Plaintiffs challenge the adequacy of Athene's separate account used to pay BMS retirees (IB 95-1 factor 5) by claiming "on information and belief" that "the separate account may also be used to support Athene's payment obligations under other, separate group annuity contracts issued by Athene." CC ¶ 134.  This allegation does nothing to undermine the adequacy of Athene's separate account.  In fact, regulatory filings show that Athene's separate account maintains a surplus of $875 million in excess of the $50 billion it holds to cover liabilities.[27]  In other words, Athene's separate account has on hand the money necessary to cover all its obligations under separate group annuity contracts, and then some.

---

[23] Ex. 7, 2023 Athene 10-K at 108.

[24] NAIC is the U.S. standard-setting and regulatory support organization created and governed by the chief insurance regulators from all 50 states Ex. 30, *What is the NAIC and what does it do?*, NAIC, https://tinyurl.com/mhpy3afz (last visited Dec. 5, 2024).  The Court may take judicial notice of NAIC materials.  *See* BMS MTD n.10.

[25] Ex. 18, NAIC Risk Based Capital (RBC) for Insurers Model Act, MO-312-1 (Jan. 2012); *see* Iowa Code § 521E; N.Y. Ins. Law § 1322; *see also* Ex. 7, 2023 Athene 10-K at 29 (reflecting 200% minimum RBC ratio).

[26] *See, e.g.*, Ex. 12, MetLife, Inc., 2023 Form 10-K at 15 (Feb. 15, 2024) (RBC ratio of 380% as of 2023 and 340% as of 2022).

[27] *See* Ex. 10, Annual Statement for the Year Ended December 31, 2023 of the Condition and Affairs of the Separate Accounts of Athene Annuity & Life Co. at Items 17 and 21.  Furthermore, as BMS explains in its brief, the transferred assets in the separate account (and the obligations they support) have additional protections should the insurers become insolvent.  BMS MTD at 6–7, 15–16.

## 2.    Athene's Supposed Credit Risk.

Plaintiffs allege that SSGA Trust Co.'s process must have been deficient based, in part, on an October 2022 report authored by NISA Investment Advisors (the "NISA Report").  CC ¶¶ 149–165.  The NISA Report purportedly quantifies a 14% economic loss to beneficiaries whose pension benefit obligations have been transferred to Athene as a result of Athene's "credit risk," which Plaintiffs allege is evidence that Athene's annuities are unsafe.  CC ¶ 151.  NISA quantifies this supposed credit risk by taking a given insurance company's bond spread and subtracting the bond spread of New York Life (NISA's preferred provider).[28]  *Id.*

Plaintiffs' allegations based on the 2022 NISA Report fail as a matter of law to raise an inference that SSGA Trust Co. acted imprudently in selecting Athene in 2019.  Courts "judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."  *PBGC*, 712 F.3d at 716; *see Patterson*, 2019 WL 4934834, at *17 (dismissing "hindsight"-based claims).  Plaintiffs fail to allege that the 2022 NISA data are reflective of information known in 2019.  Indeed, NISA's analysis is subject to significant fluctuation over time.  For example, NISA's most recent report, from September 2024, shows that (i) Prudential is now NISA's preferred provider—with 0% "economic loss to beneficiaries", and (ii) the supposed loss from Athene has declined nearly two-thirds to 5.0%.[29]

In all events, NISA simply represents one opinion of one market actor (one who is an

---

[28] A bond spread over U.S. Treasuries is the difference in yield between a bond and a U.S. Treasury bond with the same maturity.  *Spread the Word: What You Need to Know About Bond Spreads*, FINRA (May 8, 2024), https://tinyurl.com/yc3nkcbp.  Bond spreads are impacted by numerous factors, including supply and demand for bonds and the overall state of the economy.  *Id.*

[29] Ex. 16, PRT Credit Risk Monitor, NISA, https://tinyurl.com/yc2yhhma (last visited Dec. 5, 2024).

asset manager and a competitor of Athene's[30]), who "argue[s]" that fiduciaries should not "ignore" certain factors under IB 95-1.[31]  But citing that one opinion is not tantamount to plausibly alleging that SSGA Trust Co., in fact, "ignored" relevant information and did not independently conduct an "objective, thorough and analytical search"—as a conscientious fiduciary would do under Plaintiffs' own standard, IB 95-1—rather than blindly following the opinion of one of Athene's competitors.  Given this, the NISA Report cannot support Plaintiffs' assertion that Athene is insufficiently creditworthy to be a prudent PRT provider.  Further undermining Plaintiffs' reliance on the NISA Report is the fact that other plaintiffs (represented by some of Plaintiffs' own counsel here) recently filed a suit alleging that a PRT to Prudential was imprudent because of Prudential's supposed riskiness—notwithstanding that Prudential is now number one in the September 30, 2024 NISA report.  *See* Class Action Complaint, *Dempsey v. Verizon*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024).

Finally, if all market participants shared the precise same view as to credit-worthiness, then there would be no need for the "objective, thorough and analytical search" that even Plaintiffs' own authority—IB 95-1—suggests.  *See* 29 C.F.R. § 2509.95-1(c) (listing factors). Indeed, courts recognize that "negative analyst reports," like NISA's, "are insufficient to create a duty . . . to question the prudence of [an investment]."  *In re RCN Litig.*, 2006 WL 1273834, at *8 (D.N.J. Mar. 22, 2006) (dismissing complaint).

### 3. Athene's Connection to Private Equity And Supposed Financial Risks.

The Complaint asserts that Athene's affiliation with Apollo, which separately engages in

---

[30] NISA's website notes that it is a "leader in liability-driven investing (LDI) and de-risking strategies for defined benefit (DB) pension plans"—*i.e.*, a de-risking alternative to a PRT.  Ex. 15, NISA, *Defined Benefit (DB):Pension Risk Management,* https://tinyurl.com/3wrkcmhc (last visited Dec. 5, 2024).

[31] Ex. 14, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx (cited in CC ¶¶ 150–161).

private equity investing, prevents Athene from being a prudent annuity provider for a PRT because the "mission of private equity does not align with the best interests of policyholders." CC ¶ 94.  But Plaintiffs do not point to any laws precluding insurers like Athene from being owned by companies that also have a private equity business.  Rather, Plaintiffs level generalized grievances with so-called "Risk-Taking Insurers" that are affiliated with private equity firms. CC ¶¶ 13, 90–97.  Such "conclusory allegation[s]" do not raise an inference of imprudence. *Bloom*, 725 F. Supp. 3d at 337; *see PBGC*, 712 F.3d at 718.

Plaintiffs' insinuation that Athene is at risk of default because "25% of Apollo-owned companies have defaulted since 2022," CC ¶ 102, is implausible because it confuses Apollo's business lines, conflating companies, like Athene, that are affiliated with Apollo with those owned by Apollo's private equity funds.  The Moody's report Plaintiffs cite for that statistic refers to the number of Apollo's ***portfolio companies*** that have defaulted—that is, the companies owned by one of Apollo's private equity funds.  Athene is separately regulated by state insurance commissioners and is part of Apollo's "retirement services" business line, which is separate and distinct from its private equity business.[32]

Plaintiffs also assert that "20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans made to highly indebted companies" and that Athene ***today*** holds "higher-than-average investment" in "unfavorable BBB" collateralized loan obligations (CLOs). CC ¶¶ 101, 108.  Not only do these allegations not "focus on facts as they existed at the time of the challenged transaction," *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 418, but they are directly refuted by Athene's SEC filings, which show that over 95% of Athene's fixed income investments (which make up 95% of its total investments) are "investment grade," bearing the

---

[32] Ex. 11, Apollo Global Management, Inc., 2023 Form 10-K at 13, 17 (Feb. 27, 2024).

highest NAIC ratings of 1 or 2.[33]  And Plaintiffs' conclusory allegation about BBB CLOs—

citing an unnamed "prominent market reporter"—is similarly unavailing:  a BBB rating

corresponds to the second-highest NAIC rating and is considered "investment grade."[34]  Indeed,

all credit rating agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.[35]

Plaintiffs themselves allege that only 5% of issuers holding an average rating of "A" from the

rating agencies—a rating that is inferior to Athene's average rating—have defaulted over the last

twenty years.  CC ¶ 162.[36]

Next, Plaintiffs allege that Athene is at risk of default because of its use of Bermuda-

based reinsurers.  CC ¶¶ 103–137.  This too is implausible, because the assertion that Bermuda

law is less stringent than other jurisdictions is inapplicable here:  judicially noticeable public

disclosures demonstrate that Athene requires its Bermuda subsidiaries to adhere to the same

capital, risk, and disclosure standards ***as its U.S. subsidiaries***.[37]  In all events, Bermuda is an

established, well-regulated jurisdiction for insurance, one of only three globally to be deemed

---

[33] Ex. 7 Athene 2023 10-K at 80, 86–87.  Plaintiffs do not allege that the less than 5% of Athene's portfolio comprised of "below investment grade" holdings is out of step with industry norms.

[34] *Id.* at 85, 86–87.

[35] *Id.* at 20–21 ("each of our significant insurance subsidiaries is rated 'A+', 'A1' or 'A' by the four rating agencies[.]"); *see also* Ex. 9, Athene Holding Ltd., Form 8-K (June 20, 2024) (AM Best upgraded its rating of Athene's financial strength from A to A+).

[36] To the extent Plaintiffs argue that Athene's purported similarities to three recently-failed insurers is indicative of imprudence, CC ¶¶ 138–148, such allegations fail for the same reason.  The 2024 failures of the three insurers identified in the Complaint cannot raise an inference of imprudence with respect the 2019 PRT at issue.  *PBGC*, 712 F.3d at 716.  And even if they could, judicially noticeable materials show that the failed insurers were in materially different financial positions than Athene at the time they failed—each had just had their Financial Strength downgraded to C-, reflecting "very weak" balance sheets.  Exs. 23–25 (NRSRO credit rating reports); *see Citibank, N.A. v. Aralpa Holdings L.P.*, 2023 WL 5971144, at *10 (S.D.N.Y. Sept. 14, 2023) (taking judicial notice of credit rating report).  By contrast, all of the credit rating agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.  *See* n.35 *supra*.

[37] Ex. 7, Athene 2023 10-K at 19 ("We maintain the same reserving principles for our Bermuda reinsurance subsidiaries as we do for our US insurance subsidiaries."); *id.* at 25 ("Under the Bermuda rules, our Bermuda reinsurance subsidiaries are required to file with the BMA group audited financial statements prepared using accounting principles generally accepted in the US (US GAAP)."); *see also id.* at 24.

regulatorily equivalent to the U.S. by the NAIC.[38]

Moreover, the use of Bermudian reinsurers is commonplace, as Plaintiffs' own sources show. Other major life insurers that similarly leverage Bermuda reinsurance include AIG, Allianz US, AXA US, Legal and General, MetLife, and Prudential—the latter of which is NISA's top-rated issuer as of September 30, 2024.[39]

### 4. Other Purported "Red Flags" Regarding Athene.

Plaintiffs further allege that Athene relied on "unreliable and misleading credit ratings from suspect private credit ratings [agencies]" Kroll Bond Rating Agency ("KBRA") and DBRS Inc. ("DBRS") to make its investment portfolio appear to be of higher quality. CC ¶¶ 166–171. Plaintiffs assert that this was a "red flag" from which a lack of prudence can be inferred. CC ¶¶ 166–171, 225. Plaintiffs' factual premises are incorrect. First, KBRA and DBRS are not "suspect" rating agencies; they are among the ten Nationally Recognized Statistical Rating Organizations (NRSROs), commonly known as credit rating agencies, recognized by the SEC.[40] Second, Athene discloses both the "NAIC's [quality] designation" and the "NRSRO rating agency designation" of its investments (including CLOs).[41] In other words, Athene discloses the NAIC's purportedly "more stringent" ratings that Plaintiffs prefer. CC ¶ 167. Third, Athene

---

[38] Ex. 31, *NAIC List of Reciprocal Jurisdictions*, NAIC, https://tinyurl.com/mwvdy263 (last visited Dec. 5, 2024).

[39] Ex. 13, Nathan Foley-Fisher et al., *Capturing the Illiquidity Premium* 6–9, Retirement Income J. (Feb. 2020), https://tinyurl.com/mkj8eefb (cited in CC ¶ 96); *see also* BMS MTD at 14.

[40] Ex. 32, U.S. SEC, Off. of Credit Ratings, Staff Report on Nationally Recognized Statistical Rating Organizations at 3–4 (Feb. 2024), https://tinyurl.com/32u7eu7d. Plaintiffs also assert that the fact "KBRA and DBRS have been fined millions of dollars by the SEC based on their rating practices . . . is a red flag." CC ¶¶ 170, 171. This too is implausible. Each of Plaintiffs' preferred "major rating agencies. . . S&P, Moody's, and Fitch," CC ¶ 167, have been fined millions *or billions* of dollars. *See, e.g.*, Exs. 19–22 (Settlement Agreements with SEC and DOJ reflecting penalties ranging from $2,500,000.00 to $1,375,000,000.00). The Court may take judicial notice of these fines because courts "routinely take judicial notice, on a motion to dismiss, of public filings, such as deferred prosecution agreements entered with the [DOJ]" and "SEC Order[s] . . . part of the SEC's administrative proceedings." *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023).

[41] *See, e.g.*, Ex. 7 Athene 2023 10-K at 85–86.

does not rely exclusively on KBRA and DBRS.  Athene utilizes the ratings of S&P, Moody's, and Fitch (Plaintiffs' preferred rating agencies) as well as KBRA and DBRS.[42]  Thus, the notion that Athene's additional use of KBRA's and DBRS's ratings "should have been a cause of serious concern" to SSGA Trust Co. is implausible.[43]

Plaintiffs also allege that in 2019 Athene was investigated by the State of New York regarding its PRT business.  CC ¶ 172.  This investigation, however, did not relate in any way to the alleged riskiness of Athene's annuities.  Rather, it related to a purely jurisdictional matter— the involvement of employees of Athene's non-New York-domiciled subsidiary in insurance transactions involving New York residents.[44]  Athene cooperated fully with the investigation and Athene's New York-domiciled subsidiary was allowed to continue its PRT business in New York.[45]

### 5.    Plaintiffs Fail to Allege That SSGA Trust Co. Could Have Selected One of Plaintiffs' Preferred Annuity Providers.

Finally, for a prudence claim to withstand a motion to dismiss, "a plaintiff must provide enough facts to show that a prudent alternative action was plausibly available."  *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).  In addition, to support an inference of imprudence by way of comparison—*i.e.*, by identifying an allegedly superior provider the fiduciaries did not choose—a plaintiff has the burden to "allege a 'meaningful benchmark.'"  *Singh v. Deloitte LLP*,

---

[42] Ex. 7 Athene 2023 10-K at 86.

[43] Furthermore, Athene does not over-rely on KBRA and DBRS over the other rating agencies, as Plaintiffs suggest. As Athene explains in its SEC filings, "[c]onsistent with the NAIC Process and Procedures Manual," Athene reports the "rating of the lowest NRSRO when the security is rated by two NRSROs" and "the second lowest NRSRO when the security is rated by three or more NRSROs."  *See, e.g.*, Ex. 7 Athene 2023 10-K at 86; Ex. 8, Athene Holding Ltd. Form 10-Q at 74 (May 10, 2022).

[44] *See generally*, Ex. 17, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of Fin. Servs. (Apr. 13, 2020) (cited CC ¶ 172).

[45] *Id.* ¶¶ 18–28.

123 F.4th 88, 95 (2d Cir. 2024) (quoting *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1157–58 (10th Cir. 2023)).  That is, "if a plaintiff relies on market comparisons to support a claim based on circumstantial evidence . . . the comparisons must be apples-to-apples."  123 F.4th at 98 (J. Robinson concurring).  The Complaint fails these standards.

Plaintiffs argue that SSGA Trust Co. should have selected a "traditional annuity provider" such as MassMutual or New York Life over Athene.  CC ¶¶ 90.  But the Complaint does not include a single factual allegation plausibly suggesting that Plaintiffs' preferred alternatives were *available here*.  *Hughes*, 63 F.4th at 630.  They do not allege, for example, that MassMutual or New York Life were interested in underwriting the BMS PRT (or even that they engage in PRTs of that size), much less at a reasonable price.[46]  MassMutual and New York Life cannot be apples-to-apples comparisons to Athene if they were not options for SSGA Trust Co. to select.  *See Singh*, 123 F.4th at 95.  Thus, having failed to "allege a meaningful benchmark," Plaintiffs fail to plausibly allege an inference of breach.  *Id.*; *see Hughes*, 63 F.4th at 630.

*     *     *

At bottom, Plaintiffs have failed to offer any non-conclusory, non-speculative allegations to support their theory that SSGA Trust Co. engaged in a deficient fiduciary process, mandating dismissal of their claim.  *See PBGC*, 712 F.3d at 716.  Indeed, Athene's dominant position in the market demonstrates that SSGA Trust Co.'s processes ended in the same result—selection of Athene—as those of many other "prudent [fiduciaries] acting in a like capacity . . . in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B); *see supra* p. 3.  Athene's "wide[] accept[ance] as an appropriate and desirable investment by other market

---

[46] *See* Ex. 33, 2022 Athene 10-K at 24 (Athene naming New York Life as competitor for its funding agreement backed notes program but not as group annuities competitor).

participants" is evidence of prudence, not imprudence. *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 312 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021). Accordingly, dismissal is warranted.

## C.    Plaintiffs' Claim of Co-Fiduciary Liability Fails.

Plaintiffs argue that SSGA Trust Co. is also liable for any "losses caused by the breach of their co-fiduciary duties under 29 U.S.C. § 1105(a)" and "§ 1104." CC ¶¶ 269, 274. As BMS argues in its brief, it is not a fiduciary and did not breach any duties and did not commit any prohibited transactions under ERISA. Further, as described herein, SSGA Trust Co. did not breach any duty either. "Plaintiffs have failed to plausibly allege a breach of fiduciary duty by any of the Defendants. Plaintiffs' claims for co-fiduciary liability [Counts I and II] must therefore be dismissed." *Bloom*, 725 F. Supp. 3d at 344; *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *6 (S.D.N.Y. Sept. 6, 2011); *see* BMS MTD § III.C.

## III.    Plaintiffs' Prohibited Transaction Claims (Counts VI, VII, and VIII) Fail as a Matter of Law.

Plaintiffs also allege that SSGA Trust Co. committed a prohibited transaction under ERISA § 406(a), 29 U.S.C. § 1106(a), by "caus[ing] the Plan to engage in the annuity transaction" because both BMS and Athene were supposedly parties in interest. CC ¶¶ 295-304 (Counts VI and VII). Plaintiffs further allege that SSGA Trust Co. committed a prohibited transaction under ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with plan assets for its own account and on behalf of "parties [BMS, Athene, SSGA Trust Co.] whose interest . . . were [sic] adverse to" that of participants. CC ¶¶ 305-307 (Count VIII).

None of these allegations states a claim for a prohibited transaction.

## A.    Plaintiffs Do Not State a Claim Under ERISA Section 406(a).

### 1.    Plaintiffs Fail to State a Claim that SSGA Trust Co. Caused a Prohibited Transaction Between the Plan and BMS.

Count VI asserts that "State Street caused the Plan to engage in the annuity transaction",

which allegedly "constituted a direct or indirect (i) exchange of property between the Plan, on one hand, and [BMS], on the other hand; (ii) furnishing of services between the Plan and [BMS]; and (iii) the transfer to, or use by or for the benefit of [BMS], of Plan assets." CC ¶ 297.

The Complaint's own allegations defeat this claim. The Complaint nowhere alleges that the PRT transaction involved any exchange or transfer of plan assets *to BMS* or the use by or for the benefit *of BMS* of plan assets; rather, the Complaint alleges that BMS "paid Plan assets *to Athene*," CC ¶ 5 (emphasis added)—not to itself.

Plaintiffs attempt to argue around their own pleaded fact by elsewhere alleging that the PRT transaction resulted in surplus assets that reverted to BMS, as well as "administrative cost savings" and savings in premium payments. CC ¶¶ 201-209. These facts do not support a claim. ERISA expressly permits the reversion of plan assets to a plan sponsor that "purchase[d] irrevocable commitments from an insurer to provide all benefit liabilities under the plan." 29 U.S.C. § 1341(b)(3)(A)(i); *accord id.* § 1344(d) (distribution of residual assets). And ERISA further provides that a reversion of plan assets to a fiduciary is *not* a prohibited transaction if the reversion complies with 29 U.S.C. § 1344. *Id.* § 1108(b)(9). Plaintiffs do not allege that the reversion violated any condition of 29 U.S.C. § 1344(d).[47]

Courts routinely hold that obtaining such a reversion does not constitute a prohibited transaction. *See, e.g.*, *Dist. 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1478–79 (S.D.N.Y. 1983) (dismissing claim because employer had statutory "right to recapture the surplus assets"). And in *Waller v. Blue Cross of Cal.*, 32 F.3d 1337 (9th Cir. 1994), the Ninth Circuit affirmed the dismissal of a claim that "the allegedly excess reversion Blue Cross

---

[47] Indeed, the plan documents incorporated into the Complaint establish that BMS was authorized to recapture any surplus plan assets upon termination of the plan, *see* Ex. A to BMS MTD at § 1A.5—and the Complaint recognizes this as well. *See* CC ¶ 203 (acknowledging that "surpluses" would have reverted to BMS even with a different annuity provider).

received . . . is a prohibited transfer to a party in interest under § 406(a)." *Id.* at 1345. The court held that "purchasing replacement annuities as part of a plan termination even with [an allegedly infirm process and improper motivations for choosing the annuity provider] is not the kind of transaction § 406 prohibits." *Id.* at 1346. For the same reason, any reversion to BMS as a result of the PRT cannot support a § 406(a) claim.[48]

Finally, as explained in BMS's memorandum, Count IV fails for the independent reason that 29 U.S.C. § 1108(b)(17)(A) exempts the BMS PRT from ERISA's prohibited transaction rules. *See* BMS MTD at 26.

### 2. Plaintiffs Fail to State a Claim that SSGA Trust Co. Caused a Prohibited Transaction Between the Plan and Athene.

Count VII asserts that SSGA Trust Co. committed a prohibited transaction under ERISA § 406(a) by "caus[ing] the Plan to enter into the annuity transaction", given that Athene was supposedly a "party in interest." CC ¶¶ 303. This allegation fails to state a claim under Section 406(a) because Athene was not a party in interest with respect to the Plan.

An essential component of a Section 406(a) claim is that the transaction is between the Plan and a "party in interest." 29 U.S.C. § 1106(a). Count VII must be dismissed because, as BMS explains in is memorandum, Athene did not provide services to the Plan and therefore was not a "party in interest." *See* BMS MTD at 25–26.

Not only does Athene provide no services to the Plan, but Count VII also fails because Athene was not a "party in interest" ***before*** entering into the BMS PRT. Courts regularly conclude that the *initial* provision of services to a plan is not a prohibited transaction under ERISA § 406(a). *See Patrico v. Voya Fin., Inc.*, 2018 WL 1319028, at *7 (S.D.N.Y. Mar. 13,

---

[48] Nor can Plaintiffs state a claim for a prohibited transaction due to BMS's alleged cost savings. This theory is facially defective because it is an attack on the settlor decision to terminate the plan through a PRT rather than the fiduciary decision to select Athene. *See* BMS MTD § III.A.1.

2018) ("It is circular to suggest that an entity which becomes a party in interest by providing services to the Plan has engaged in a prohibited transaction simply because the Plan has paid for those services."); *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 609-10 (5th Cir. 2023) (same, collecting holdings).

### 3. Any Transaction Under Section 406(a) Would Be Exempt by Statutory and Administrative Exemptions.

Finally, even if Plaintiffs had adequately alleged that the BMS PRT was a prohibited transaction under Section 406(a) (which they have not), Counts VI and VIII would still fail because the BMS PRT would fall within one or more of several exemptions to the prohibited transaction proscriptions under Section 408(b) or issued by the DOL under Section 408(a).

As BMS argues in its memorandum, which SSGA Trust Co. joins, the PRT here is covered by statutory exemptions under ERISA Sections 408(b)(2) and 408(b)(17) as well as Prohibited Transaction Exemption ("PTE") 84-24. *See* BMS MTD at 26–27.

Additionally, PTE 84-14, the Qualified Professional Asset Manager exemption ("QPAM Exemption") also exempts the BMS PRT from Section 406(a). Under the QPAM Exemption, the "restrictions of ERISA section 406(a)(1)(A) through (D) . . . shall not apply to a transaction between a party in interest . . . and an investment fund . . . which is managed by a qualified professional asset manager (QPAM)." 49 Fed. Reg. 9494, 9504 (Mar. 13, 1984). SSGA Trust Co. expressly represented that it was a QPAM in connection with the BMS PRT.[49] Plaintiffs do not allege, nor could they, that SSGA Trust Co. has not satisfied any of this exemption's required conditions. Thus, SSGA Trust Co. may also avail itself of the QPAM Exemption.

---

[49] Ex. B to BMS MTD (representing that SSGA Trust Co. qualifies for Class Exemption 84-14).

**B.**     **Plaintiffs Do Not State a Claim Under ERISA Section 406(b).**

Plaintiffs also allege that SSGA Trust Co. violated Section 406(b) by using Plan assets "to purchase Athene annuities instead of the safest available," thereby increasing "Bristol-Myers' profits" and "deal[ing] with the assets of the Plan[] in their own interest or for their own account."  CC ¶ 307 (Count VIII).  This theory fails for two reasons.

***First***, as explained by BMS, the BMS PRT is expressly exempt from the restrictions of both sections 406(a) and 406(b) by PTE 84-24.  *See* BMS MTD at 26.

***Second***, Section 406(b) would not apply in any event.  That statute prohibits fiduciaries from engaging in transactions that are "tainted by a conflict of interest and thus highly susceptible to self-dealing."  *Cunningham*, 86 F.4th at 973 (quotation omitted).  Thus, to state a claim, a plaintiff must show that the fiduciary "deal[t] with the assets of the plan in his own interest or for his own account" or that the fiduciary, in his individual or in any other capacity, acted in any transaction involving the plan on behalf of a party whose "interests are adverse to the interests of the plan or the interests of its participants or beneficiaries."  29 U.S.C. § 1106(b). "The Second Circuit has construed § 406(b)(2) narrowly, holding that a transaction between the plan and a party having an adverse interest is required."  *Patrico*, 2018 WL 1319028, at *5 (quotation omitted).  The Complaint fails this standard; it contains no plausible, non-conclusory allegations of self-dealing on the part of SSGA Trust Co.  Each of Plaintiffs' theories as to how SSGA Trust Co. allegedly benefited from selecting Athene is debunked.  *See supra* § II.A.

## CONCLUSION

For the foregoing reasons, and those asserted in BMS's memorandum, the Complaint should be dismissed with prejudice.

Dated: January 15, 2025      Respectfully submitted,


<u>/s/ *James O Fleckner*</u>
James O. Fleckner, *admitted pro hac vice*
Alison V. Douglass, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
JFleckner@goodwinlaw.com
ADouglass@goodwinlaw.com

Benjamin S. Reilly, *admitted pro hac vice*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
Fax: (202) 346-4444
BReilly@goodwinlaw.com

Samuel J. Rubin
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018-1405
Tel.: 212-813-8852
Fax: 646-558-4141
SRubin@goodwinlaw.com

*Counsel for State Street Global Advisors*
*Trust Company and Denise R. Sisk*

## CERTIFICATE OF WORD COUNT

I, James O. Fleckner, certify that this memorandum complies with Local Rule 7.1(c) and Judge Margaret M. Garnett's Individual Rule II.B.2.  According to Microsoft Word's word count function, this memorandum contains 8,750 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificates.

Dated: January 15, 2025                    /s/ *James O. Fleckner*
                                           James O. Fleckner

ACTIVE/135774225