UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES DOHERTY, *et al.*,

    Plaintiffs,

        v.

BRISTOL-MYERS SQUIBB CO., *et al.*,

    Defendants.

Case No. 1:24-cv-06628-MMG

**MEMORANDUM OF LAW IN SUPPORT OF THE BRISTOL-MYERS
SQUIBB DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

I.      Plaintiffs Fail To Allege An Injury In Fact Sufficient To Confer Article III
Standing. ................................................................................................................... 8

      A.     Plaintiffs Have Not Been Injured Because They Continue To Receive The
Monthly Benefits To Which They Are Entitled. ................................................... 9

      B.     Plaintiffs' Alleged Injuries Are Not Sufficiently Imminent And Plaintiffs
Have Not Alleged A Substantial Risk Of Future Harm. ....................................... 12

            1.     Plaintiffs Fail To Plead That Athene Is At Substantial Risk Of
Default. ....................................................................................................... 12

            2.     Even in the Event of Default, Plaintiffs Fail To Plausibly Plead A
Substantial Risk Of Harm To *Their Benefits*. .......................................... 15

      C.     Plaintiffs Lack Standing To Pursue Claims Under Section 1132(a)(2). ............... 17

II.    Plaintiffs Lack Statutory Standing To Pursue Claims Under Sections 1132(a)(2)
and (a)(3). ................................................................................................................. 17

III.   Plaintiffs Fail To State A Claim Under ERISA. ..................................................... 18

      A.     The BMS Defendants Have Not Breached Any Fiduciary Duties (Count I)........ 18

            1.     Pursuing A PRT Is Not A Fiduciary Function. ......................................... 18

            2.     The BMS Defendants Did Not Select Athene. ......................................... 19

            3.     Plaintiffs Fail To Allege That BMS Breached Its Duty To Monitor
State Street. ................................................................................................ 20

      B.     BMS Did Not Breach Any Fiduciary Duties By Selecting State Street
(Count III). .......................................................................................................... 22

      C.     Plaintiffs Fail To State A Claim Based On Nonfiduciary Liability (Count
II).......................................................................................................................... 22

    D.    Plaintiffs' Prohibited Transaction Claims (Counts IV, V & VIII) Fail. ............... 24

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
    976 F.3d 585 (5th Cir. 2020) .................................................................6

*Beck v. Pace Int'l Union*,
    551 U.S. 96 (2007)........................................................................ *passim*

*Becker v. Cephalon, Inc.*,
    2015 WL 5472311 (S.D.N.Y. Sept. 15, 2015)........................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................8

*Bloom v. AllianceBernstein L.P.*,
    725 F. Supp. 3d 325 (S.D.N.Y. 2024).............................................20, 25

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...............................................................22

*Burke v. Boeing Co.*,
    42 F.4th 716 (7th Cir. 2022) .................................................................20

*Carter v. San Pasqual Fiduciary Tr. Co.*,
    2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) .......................................21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................12

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021) .....................................................................8

*Coyne & Delany Co. v. Selman*,
    98 F.3d 1457 (4th Cir. 1996) ..........................................................20, 21

*Cunningham v. Cornell University*,
    86 F.4th 961 (2d Cir. 2023) ..............................................................3, 26

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
    191 F. Supp. 2d 382 (S.D.N.Y. 2002)..................................................16

*David v. Alphin*,
 704 F.3d 327 (4th Cir. 2013) ............................................................................14

*Does 1-2 v. Hochul*,
 632 F. Supp. 3d 120 (E.D.N.Y. 2022) ...............................................................14

*Dupree v. Prudential Ins. Co. of Am.*,
 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007)....................................................18

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)....................................................22

*Fitch v. Maryland*,
 2020 WL 5362097 (D. Md. Aug. 25, 2020) ........................................................11

*Flanigan v. Gen. Elec. Co.*,
 242 F.3d 78 (2d Cir. 2001).................................................................................27

*Gerosa v. Savasta & Co.*,
 329 F.3d 317 (2d Cir. 2003)...............................................................................23

*Global Reinsurance Corp. of Am. v. Century Indem. Co.*,
 22 F.4th 83 (2d Cir. 2021) .................................................................................13

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
 2020 WL 5994957 (E.D.N.Y. Oct. 9, 2020)...............................................10, 12

*Goodsell v. Tchrs. Health Trust*,
 2024 WL 2750467 (D. Nev. May 29, 2024) .......................................................14

*Harris Trust & Savings Bank v. Salomon Smith Barney*,
 530 U.S. 238 (2000)...........................................................................17, 23, 24

*Harty v. West Point Realty, Inc.*,
 28 F.4th 435 (2d Cir. 2022) .................................................................................8

*Hughes Aircraft Co. v. Jacobson*,
 525 U.S. 432 (1999)............................................................................................11

*Indep. Ass'n of Publishers' Emps., Inc. v. Dow Jones & Co., Inc.*,
 671 F. Supp. 1365 (S.D.N.Y. 1987).............................................................20, 22

*Lacewell v. Office of Comptroller of Currency*,
 999 F.3d 130 (2d Cir. 2021)...............................................................................14

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
 552 U.S. 248 (2008)............................................................................................17

*Leber v. Citigroup 401(K) Plan Inv. Comm.*,
   2015 WL 6437475 (S.D.N.Y. Oct. 16, 2015) ........................................................................19

*Lee v. Verizon Comms., Inc.*,
   837 F.3d 523 (5th Cir. 2016) ........................................................................................15, 18

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ...........................................................................................................4

*Marshall v. Carroll*,
   1980 U.S. Dist. LEXIS 17767 (N.D. Cal. Apr. 18, 1980) ...................................................25

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021) ............................................................................................9, 12

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ..........................................................................................17, 19, 23

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
   414 U.S. 453 (1974) ..........................................................................................................17

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
   513 U.S. 251 (1995) ..........................................................................................................25

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009) ..............................................................................21

*Nicolas v. The Trustees of Princeton Univ.*,
   2017 WL 4455897 (D.N.J. Sept. 25, 2017) ......................................................................21

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ................................................................................................3, 4, 18, 19

*Ramos v. Banner Health*,
   1 F.4th 769 (10th Cir. 2021) ............................................................................................26

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) ...............................................................................................23

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ...........................................................................................3, 23

*Rinehart v. Lehman Bros. Holdings, Inc.*,
   817 F.3d 56 (2d Cir. 2016) ...............................................................................................20

*Rynasko v. N.Y. Univ.*,
   63 F.4th 186 (2d Cir. 2023) ...............................................................................................6

*Scalia v. WPN Corp.*,
    417 F. Supp. 3d 658 (W.D. Pa. 2019) ............................................................. 20

*Sellers v. Anthem Life Ins. Co.*,
    316 F. Supp. 3d 25 (D.D.C. 2018) ................................................................. 25

*Spencer-Smith v. Ehrlich*,
    347 F.R.D. 606 (S.D.N.Y. 2024) ..................................................................... 5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................ 8

*Pension Benefit Guar. Corp. ex rel. St. Vincent's Catholic Med. Ctrs. Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) .......................................................................... 22

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020) ............................................................................. *passim*

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................ 8

*Volino v. Progressive Cas. Ins. Co.*,
    2024 WL 1251185 (S.D.N.Y. Mar. 22, 2024) ............................................... 16

**Statutes**

29 U.S.C. § 1002 ............................................................................................... 3, 25

29 U.S.C. § 1055 ................................................................................................... 11

29 U.S.C § 1056 .................................................................................................... 11

29 U.S.C. § 1104 ................................................................................................... 27

29 U.S.C. § 1106 ................................................................................ 24, 25, 26, 27

29 U.S.C. § 1109 ................................................................................................... 17

29 U.S.C. § 1132 ............................................................................... 17, 18, 22, 23

29 U.S.C. § 1341(b)(3)(A)(i) ................................................................................. 4

29 U.S.C. § 1344(d)(1) ......................................................................................... 27

Iowa Code § 507C.2.14.b ....................................................................................... 6

Iowa Code § 508A.1 ............................................................................................... 6

N.Y. Ins. Law § 7435(b) ...........................................................................................................6

**Regulations**

29 C.F.R. § 4041.27 .........................................................................................................15, 16

**Other Authorities**

71 Fed. Reg. 5887 (Feb. 3, 2006) ..........................................................................................26

DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ....................................................25

## PRELIMINARY STATEMENT

This case should be dismissed because Plaintiffs do not plead an injury sufficient to establish Article III standing and otherwise fail to state a claim under the Employee Retirement Income Security Act ("ERISA").

Plaintiffs are two former employees of the Bristol-Myers Squibb Co. ("BMS") who have received and are continuing to receive pension benefits earned under a pension plan sponsored by BMS.  Through a common transaction known as a pension risk transfer ("PRT"), the BMS pension plan was terminated and the obligation to pay participants' pension benefits was transferred from the BMS plan to one of two insurance companies (collectively referred to by Plaintiffs as "Athene").  Since the PRT, the former plan participants have received 100% of their fixed benefit payments from Athene, without fail.  Moreover, the Complaint is entirely devoid of any allegation that nonpayment is imminent.  Nonetheless, Plaintiffs seek to assert claims under ERISA because they disagree with the selection of Athene.  Plaintiffs' disagreement, however, does not give rise to cognizable claims.

While Plaintiffs do not dispute that PRTs are lawful under ERISA, they incorrectly assert that this PRT violated ERISA because of the alleged "risk" associated with Athene.  Although Plaintiffs speculate about trouble Athene may theoretically face at some unknown future point, they fatally fail to allege any facts about how or when the alleged risks could manifest into concrete losses for Athene —let alone for Plaintiffs themselves.  Indeed, notably absent from the Complaint are any allegations that Plaintiffs have yet to lose *even one single penny* as a result of the PRT.  They also fail to allege any non-speculative imminent or likely risk of *future* impairment to their benefits.  Nor could Plaintiffs plausibly do so, given the substantial protections in place to secure their benefits.

**Article III Standing.** As a threshold matter, Plaintiffs lack an injury-in-fact to confer Article III standing. The Supreme Court recently addressed standing in the context of benefits earned under a defined benefit pension plan, and held that the plaintiffs lacked standing "for a simple, commonsense reason: They have received all of their vested pensions benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Likewise here, Plaintiffs do not allege that they have not received all of their pension benefits or that their legal rights to their benefits have been diminished. Instead, they seek damages based on some inchoate future risk of lost benefits. Their purported injuries are entirely speculative, and their claims fail the long-standing Article III requirement of an actual or imminent injury.

Even if Plaintiffs had standing, dismissal is required because the Complaint fails to state a claim against BMS for breach of fiduciary duty, violations of nonfiduciary obligations, and prohibited transactions.

**Fiduciary Duty Claims (Counts I & III).** Plaintiffs' breach of fiduciary duty claims fail for three fundamental reasons. *First*, BMS's decision to terminate the plan via a PRT cannot violate ERISA's fiduciary duty requirements because "whether to terminate an ERISA plan is a *settlor function immune from ERISA's fiduciary obligations*." *See, e.g.*, *Beck v. Pace Int'l Union*, 551 U.S. 96, 101 (2007) (emphasis added). *Second*, the selection of Athene, although a fiduciary act, was not made by BMS. As the independent fiduciary for the transaction, State Street Global Advisors Trust Co. ("State Street") made that decision. *Third*, while retaining State Street to serve as independent fiduciary was a fiduciary act by certain BMS defendants, the allegations that BMS breached its fiduciary duties in selecting and monitoring State Street are conclusory and insufficient to state a claim.

**Nonfiduciary Liability Claim (Count II)**.  Plaintiffs' novel attempt to impose liability on BMS for nonfiduciary acts is contrary to settled law because ERISA "does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach."  *Renfro v. Unisys Corp.*, 671 F.3d 314, 325 & n.6 (3d Cir. 2011).

**Prohibited Transaction Claims (Counts IV, V & VIII).**  Finally, Plaintiffs' prohibited transaction claims fail.  Athene did not provide services to the Plan and therefore was not a "party in interest" for purposes of the prohibited transaction rules.  Furthermore, because ERISA expressly recognizes an employer's ability to terminate a plan, doing so cannot constitute a prohibited transaction.

For these and the additional reasons below, Plaintiffs' claims against BMS should be dismissed.[1]

## BACKGROUND[2]

### A.    ERISA

ERISA imposes duties of loyalty and prudence on plan fiduciaries.  *See Cunningham v. Cornell University*, 86 F.4th 961, 970 (2d Cir. 2023), *cert. granted*, 603 U.S. __, 2024 WL 4394127 (Oct. 4, 2024).  Crucially, however, ERISA imposes these duties on persons only "to the extent" they exercise "discretionary authority or discretionary control" in managing or administering a plan.  29 U.S.C. § 1002(21)(A); *see also Pegram v. Herdrich*, 530 U.S. 211, 222 (2000) ("A

---

[1] The BMS Defendants also incorporate by reference herein the arguments set forth in State Street's Motion to Dismiss, filed on January 15, 2025.

[2] This background is based on the non-conclusory factual allegations in the Complaint, treated as true only for purposes of this motion to dismiss, as well as sources incorporated in the Complaint or subject to judicial notice.  "While a court must generally accept a plaintiff's factual allegations as true in evaluating a motion to dismiss, it 'need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.'"  *Becker v. Cephalon, Inc.*, 2015 WL 5472311, at *5 (S.D.N.Y. Sept. 15, 2015).

fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'").  Under ERISA, employers often serve as "plan sponsors" that establish or maintain benefits plans, but this status is distinct from fiduciary status under ERISA and does not subject an employer to fiduciary liability.  *See Pegram*, 530 U.S. at 225.  "Only when fulfilling certain defined functions … does a person become a fiduciary." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).  And determining whether an employer is wearing its fiduciary "hat" "depends upon the nature of the function performed."  *Beck*, 551 U.S. at 101.

Of particular significance here, ERISA expressly contemplates that employers may terminate the pension plans they sponsor by transferring benefit obligations to insurance companies, and it sets forth the requirements for doing so.  *See, e.g.*, 29 U.S.C. § 1341(b)(3)(A)(i) (requiring the purchase of "irrevocable commitments from an insurer").  There is no allegation that BMS failed to comply with these requirements.  Moreover, the Supreme Court has made clear that the decision "whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations."  *Beck*, 551 U.S. at 101.

## B.    Plaintiffs' Allegations

BMS is a publicly traded pharmaceutical company and sponsored the Bristol-Myers Squibb Company Retirement Income Plan (the "Plan") until 2019.  Compl. ¶¶ 40, 185.  The Bristol-Myers Squibb Company Pension Committee (the "Pension Committee") administered the Plan.  *Id.* ¶ 42. The Pension Committee is overseen by the Bristol-Myers Squibb Compensation and Management Development Committee of the Board of Directors (the "Compensation Committee").  *Id.* ¶ 41. Plaintiffs bring suit against BMS, the Pension Committee, and the Compensation Committee (collectively, the "BMS Defendants").  *Id.* ¶¶ 40-42.

This case stems from the Plan's 2019 transfer of the Plan's pension obligations to two insurance companies, Athene Annuity and Life Co. ("Athene Iowa") and Athene Annuity & Life Assurance Company of New York ("Athene New York"). *Id.* ¶¶ 3, 185. The Plan amendment reflecting the non-fiduciary decision to terminate the Plan *required* the Pension Committee to appoint an independent fiduciary to select the insurers to provide the annuity contracts. Ex. A. Accordingly, the Pension Committee appointed Defendant State Street to serve "as an 'independent fiduciary' to the Plan for the purpose of the annuity transactions." Compl. ¶ 43.

Importantly, Plaintiffs do not allege any facts about the process the Pension Committee used to select State Street. Instead, the Complaint merely asserts that BMS and the Pension Committee "failed to engage in a thorough, independent investigation of available independent fiduciaries for the Plan." *Id.* ¶ 240.

When State Street was retained, it assumed sole responsibility for selecting an annuity provider for the PRT. *Id.* ¶¶ 174, 181-83, 185; *see* Ex. B at 1-2.[3] In other words, State Street, rather than the Pension Committee (or any other BMS Defendant), was the fiduciary responsible for the selection of Athene New York and Athene Iowa. The group annuity contracts purchased in connection with that PRT are attached as Exhibits C-D (the "Contracts").

Retirees whose benefit obligations are transferred to an insurance company receive the same benefits as they had beforehand; only the benefit provider changes. *See, e.g.*, Ex. E at 40.[4]

---

[3] Because the Complaint relies upon the terms and effect of the relationship between BMS and State Street, BMS's engagement letter with State Street is integral to the Complaint and properly considered on a motion to dismiss. *See Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 631 (S.D.N.Y. 2024) ("In most cases where a document is integral, it is because it is a contract or other legal document containing obligations upon which the plaintiff's compliant stands or falls….") (cleaned up).

[4] Advisory Council on Employee Welfare and Pension Benefit Plans, *Model Notices and Disclosures for Pension Risk Transfers* (Nov. 2015), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/2015-model-notices-and-disclosures-for-pension-

With respect to the PRTs at issue here, Athene New York and Athene Iowa each irrevocably guaranteed that it would pay the benefits of each retiree covered under the applicable insurer's contracts.  *See* Ex. C § 2.1; Ex. D § 2.1.  According to Plaintiffs, when the annuity purchases at issue here occurred, Athene had already engaged in PRTs worth a total of $4.1 billion with other companies.  Compl. ¶ 227.  Annuities now constitute Athene's "primary product line."  Ex. F at 13.[5]

The Contracts provide that the insurer will create a separate account and that the assets transferred to the insurer to purchase the Contracts will be placed into those separate accounts, therefore shielding them from the liabilities of the insurer's general account.  *See* Ex. C § 1.2; Ex. D § 1.2; *see also* Ex. G at 29 (explaining separate account).[6]  The Contracts provide:

> On the Effective Date, Athene will allocate 100% of the Contribution Amount received on such date to the Separate Account.  All assets allocated to the Separate Account will be held by Athene in one or more custody accounts at entities independent of Athene and each such custody account shall only hold assets allocated to the Separate Account.

*See, e.g.*, Ex. C § 1.2; Ex. D § 1.2.  In the event of insurer insolvency, the separate account assets are not available to Athene's creditors but, instead, may be used only to pay benefits under the group annuity contracts supported by the accounts.  *See* Ex. C § 1.6; Ex. D § 1.6; *see also* N.Y. Ins. Law § 7435(b); Iowa Code §§ 507C.2.14.b, 508A.1.  Furthermore, the initial premium for the

---

risk-transfers.pdf.  The Court "may take judicial notice of documents from official government websites."  *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023).

[5] Athene Holding Ltd. Annual Report (Form 10-K) (Mar. 1, 2023).  *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Form 10-K could be considered on motion to dismiss because it is a "publicly available governmental filing[] and the existence of the document[], and the contents therein, cannot reasonably be questioned").

[6] ERISA Advisory Council, *Consultation Paper on Interpretive Bulletin 95-1* (July 2023), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/eac-consultation-paper07142023-r.pdf.

Contract is allocated to the separate account, meaning that the pension obligations are fully supported by the separate account from day one. Ex. C § 1.2; Ex. D § 1.2. And if there is a shortfall in the separate account, funds from the general account may be used to support the separate account's obligations (but not vice versa). *See* Ex. C § 1.7; Ex. D § 1.7. Accordingly, the transferred assets (and thus the pension benefits they support) have significant protections even if Athene were to become insolvent.

Pension benefits guaranteed by an insurance company are also protected by state guarantee associations ("SGAs"). Compl. ¶ 67. SGAs are instruments of state law, and they are funded by assessments of member insurers when another insurer declares insolvency. *Id.* ¶ 69. These SGA systems "are rarely triggered, so that over the past 30+ years, no one has lost a penny under a [pension risk transfer] annuity." Ex. H at 4.[7]

Plaintiffs are two former BMS employees who were participants in the Plan until their benefit obligations were transferred to either Athene New York or Athene Iowa. Compl. ¶¶ 38-39. Each Plaintiff is receiving pension payments from the applicable Athene insurance company. *Id.* There are no allegations that either Plaintiff has received even one cent less than the full amount of benefits they earned under the Plan. Nonetheless, Plaintiffs assert class action claims against BMS under ERISA, alleging breaches of fiduciary duties (Counts I & III), "knowing participation" by a nonfiduciary in a breach of fiduciary duties (Count II), and prohibited transactions (Counts IV, V & VIII).

---

[7] Statement of the 2023 Advisory Council on Employee Welfare and Pension Benefit Plans to the U.S. Department of Labor Regarding Interpretive Bulletin 95-1 (Aug. 29, 2023), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/statement-regarding-interpretive-bulletin-95-1.pdf.

**LEGAL STANDARD**

To survive a Rule 12(b)(1) motion, a plaintiff "bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  When evaluating a facial challenge to standing, courts look only to "the allegations [in] the complaint and the exhibits attached to it."  *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  "[A] plaintiff asserting standing must allege facts that affirmatively and plausibly suggest that [he] has standing to sue and courts need not credit a complaint's conclusory statements without reference to its factual context."  *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (cleaned up).

To survive a Rule 12(b)(6) motion, a complaint must also "state[] a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough.  *Id.* at 678.  Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  These "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

**ARGUMENT**

**I.    Plaintiffs Fail To Allege An Injury In Fact Sufficient To Confer Article III Standing.**

"Injury in fact is a constitutional requirement."  *Spokeo*, 578 U.S. at 339.  To show an injury in fact, plaintiffs must establish they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.*  Showing a concrete and actual or imminent injury is necessary because "federal courts do not adjudicate hypothetical or abstract disputes."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  When a plaintiff seeks redress for future harm, "'allegations of possible future injury' or

even an 'objectively reasonable likelihood' of future injury are insufficient." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021).

Under recent and directly applicable Supreme Court precedent, Plaintiffs fail to establish an injury in fact.  First, because Plaintiffs have received all of their vested pensions benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives, they cannot allege that the PRTs here caused them a concrete injury.  Second, Plaintiffs' assertions that Athene might fail in the future are far too speculative to establish an imminent injury.

### A.   Plaintiffs Have Not Been Injured Because They Continue To Receive The Monthly Benefits To Which They Are Entitled.

The Supreme Court's decision in *Thole*, holding that participants in a defined benefit plan lacked standing to challenge the alleged mismanagement of a plan, controls the analysis here. *Thole*, 590 U.S at 547.  In *Thole*, plan participant plaintiffs alleged that defendants breached their fiduciary duties of loyalty and prudence by poorly investing the plan's assets.  *Id.* at 541.  Despite allegations that the plan suffered losses of approximately $750 million due to the investment decisions, the Supreme Court affirmed dismissal for lack of standing because the participants "ha[d] been paid all of their monthly pension benefits," and therefore "ha[d] not sustained any monetary injury."  *Id.* at 540.

The Court noted that, because the plaintiffs were participants in a defined benefit plan, they "receive a fixed payment each month [that] do[es] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions."  *Id.*  The Court contrasted a defined benefit plan with a "defined-contribution plan, such as a 401(k) plan," where a participant's benefits "can turn on the plan fiduciaries' particular investment decisions."  *Id.*  That distinction, the Court held, was "of decisive importance to th[e] case."  *Id.*  It demonstrated that plaintiffs "ha[d] no concrete stake in the lawsuit."  *Id.* at 542.

As a result, the *Thole* plaintiffs could not bring suit to challenge the alleged mismanagement of the plan. *See id.* at 543.  If the plaintiffs "were to *lose* th[e] lawsuit, they would still receive the exact same monthly benefits as if they "were to *win* th[e] lawsuit."  *Id.* at 541 (emphasis in original).  So they "lack[ed] Article III standing for a simple, commonsense reason: They have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives."  *Id.* at 547.  "There is no ERISA exception to Article III."  *Id.*

This case is on all fours with *Thole*.  Just like in *Thole*, Plaintiffs participated in a defined benefit plan entitling them to receive fixed monthly benefits payments.  Though they are no longer plan participants, Plaintiffs are still entitled to receive "those same monthly payments for the rest of their lives."  *Id.* at 542; Compl. ¶¶ 38-39.  And they have.  Plaintiffs do not allege that Athene has missed a single payment; nor do they allege that they failed to receive even one cent of the benefits to which they are entitled.  In other words, if Plaintiffs were to "*lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less," and if Plaintiffs were to "*win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more."  *Thole*, 590 U.S. at 541.  Plaintiffs thus "have no concrete stake in this lawsuit" and their claims should be dismissed. *Id.*; *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 2020 WL 5994957, at *3 (E.D.N.Y. Oct. 9, 2020) (dismissing ERISA claims under *Thole* because plaintiffs did "not claim that they were denied any of the [] benefits promised under the Plan"), *aff'd* 858 F. App'x 432 (2d Cir. 2021).

To the extent Plaintiffs contend their benefits are somehow worth less now that they are paid by Athene (as opposed to the Plans), Compl. ¶¶ 46-47, that is not a concrete injury.  *Thole*

made clear that it is the *amount* of the monthly benefits payment that matters for standing, not its *source*. 590 U.S. at 542-43. Just like in *Thole*, Plaintiffs' benefits payments "are fixed and will not change" no matter who pays them each month, and Plaintiffs have not suffered an injury simply because they wish the payments were made by the Plan and not Athene. *Id.* at 543; *see Fitch v. Maryland*, 2020 WL 5362097, at *4 (D. Md. Aug. 25, 2020) (plaintiffs lacked standing to prevent state from diverting money from trust fund because any contractual right to receive benefits from state existed "regardless of the source of funding" and did not entitle plaintiffs to payment from that specific trust fund).

Moreover, defined benefit pensions are not like commodities or investment products that may be traded and valued based on risk. Under ERISA, a pension may not be assigned or alienated. 29 U.S.C § 1056(d). Indeed, when a pension is valued—for example, if paid in a lump sum to a retiree—its present value is calculated based on interest rates and mortality assumptions, without taking into account the risk of nonpayment. *See* 29 U.S.C. § 1055(g) (specifying factors to be used when calculating the value of a lump sum payment). Moreover, pension plan participants do not have an interest in the pool of assets used to pay their benefits. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999) (explaining that defined benefit "plan members generally have a nonforfeitable right only to their 'accrued benefit,'" and do not have "a claim to any particular asset that composes a part of the plan's general asset pool"). Rather, a defined benefit plan is "in the nature of a contract," and so any risks associated with plan investments falls entirely on the plan. *Thole*, 590 U.S. at 542-43.

The same is true here. Athene remains contractually obligated to pay Plaintiffs' benefits payments, and Athene, not Plaintiffs, would be "on the hook for [payment] shortfalls." *Id.* at 543 ("The plan participants' benefits are fixed and will not change, regardless of how well or poorly

the plan is managed.").  This remains true regardless of whether Plaintiffs are owed the benefits by a pension plan or by an insurer.  At bottom, as *Thole* makes clear, the value of Plaintiffs' retirement benefits is simply the amount of the monthly annuity payments to which they are entitled—something that has not changed as a result of the PRT.  *See id.*  Accordingly, any assertion that Plaintiffs have been harmed because their benefits have somehow been "diminished" fails as a matter of law.

### B.     Plaintiffs' Alleged Injuries Are Not Sufficiently Imminent And Plaintiffs Have Not Alleged A Substantial Risk Of Future Harm.

Plaintiffs also fail to escape from *Thole* by plausibly alleging that any non-payment of benefits is "certainly impending" or that there is a "substantial risk" such non-payment will occur. *McMorris*, 995 F.3d at 299; Compl. ¶ 47.  Plaintiffs must at a minimum show that Athene's management is "so egregious that it substantially increase[s] the risk that" Athene "would fail and be unable to pay" Plaintiffs' future benefits payments.  *Gonzalez*, 2020 WL 5994957, at *3.  To establish standing, Plaintiffs thus must demonstrate there is a substantial risk that (1) the fully funded separate accounts that exist exclusively to provide retirement benefits will be insufficient, (2) Athene will suffer catastrophic losses and default, (3) it will be unable to mitigate losses or secure alternative funding to pay Plaintiffs' benefits in the event of a default, and (4) Plaintiffs' benefits will not be protected by the relevant SGAs where they live.  Plaintiffs fail to allege facts suggesting this is more than a "highly attenuated chain of possibilities" insufficient to support standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

### 1.     Plaintiffs Fail To Plead That Athene Is At Substantial Risk Of Default.

Plaintiffs fail to allege any facts supporting the assertion that Athene is at a substantial risk of default, such that it will lack funding to pay their monthly benefits payments.  Compl. ¶ 47. Although Plaintiffs cite several statistics purporting to show Athene's riskiness, these statistics

simply compare Athene to *other insurers* and do not establish that Athene is *itself* at imminent risk of failure. *Id.* ¶¶ 114-130, 153-62. For example, the allegation that "Athene's surplus-to-liabilities ratio is staggeringly low when compared to that of its peer insurers" (*id.* ¶ 117) means nothing without an understanding of the baseline ratio an insurer needs to have before it is considered at risk of default (even assuming any such threshold exists). Plaintiffs do not even attempt such an explanation. *See, e.g.*, *id.* ¶¶ 161 (alleging that "credit ratings have a material impact on the likelihood of default" without explaining why Athene's A1 and A+ ratings mean it is at imminent risk of default), 115 (similar for Athene's "surplus-to-liability" ratio).

Moreover, Plaintiffs' cited metrics are at best only loosely tied to Athene's risk of default. For instance, bond prices (*id.* ¶¶ 153-58) reflect several factors, including the length of the maturity, the structure of repayment, the interest rate risk, inflation risk, liquidity risk, and call risk; they are not inherent markers of whether a company will fail. *See* Ex. I.[8] Plaintiffs' theory is that Athene's low "surplus-to-liability" ratio puts it at risk of a funding shortfall, which in turn would result in Athene's credit rating being downgraded, causing it to default. Compl. ¶¶ 132-33. But whether any of these events will occur is pure speculation, and Plaintiffs fail to allege any facts substantiating their assertions.

Plaintiffs fare no better with their allegation regarding Athene's Bermuda-headquartered reinsurance subsidiaries—Athene Life Re Ltd. and Athene Annuity Re Ltd. Compl. ¶ 105.[9] While Plaintiffs assert that Bermuda applies a "more lax" regulatory regime compared to other

---

[8] SEC, *Investor Bulletin: What are Corporate Bonds?*, https://www.sec.gov/files/ib_corporatebonds.pdf.

[9] "Reinsurance is the insurance of one insurer (the 'reinsured') by another insurer (the 'reinsurer') by means of which the reinsured is indemnified for loss under insurance policies issued by the reinsured to the public." *Global Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 88 n.3 (2d Cir. 2021). Reinsurance helps to further mitigate risk against losses. Ex. H at 2.

unspecified jurisdictions, *id.* ¶ 105, they ignore the fact that the National Association of Insurance Commissioners ("NAIC") has approved Bermuda as a "Qualified Jurisdiction" for reinsurance collateral reduction purposes. *See* Ex. J.[10]  Similarly, Plaintiffs allege that Bermuda law employs lower capital requirements and fewer investment limitations than those of the United States. *See* Compl. ¶¶ 108-09.  But they do not allege any facts about Athene Life Re's or Athene Annuity Re's current capital holdings or investment portfolio.  And, most notably, Plaintiffs fail to allege any facts suggesting that Athene Life Re and Athene Annuity Re are nearing insolvency. *Id.* ¶ 105. Likewise, Plaintiffs' attempts to compare Athene to four "recently failed insurers" in the most general and conclusory terms does not establish Athene's inherent riskiness. *Id.* ¶¶ 140-42, 144-48; *Goodsell v. Tchrs. Health Trust*, 2024 WL 2750467, at *5 (D. Nev. May 29, 2024) (dismissing plaintiffs' ERISA claims for lack of standing because they "have not plausibly alleged that the mismanagement was so egregious that it substantially increased the risk the plan and [guarantor of plan] would fail").

In short, Plaintiffs' theory "rest[s] on a highly speculative foundation lacking any discernible limiting principle" and is exactly the type of argument courts have repeatedly rejected. *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013).  "[T]he risk that [Plaintiffs'] pension benefits will at some point in the future be adversely affected as a result of the present alleged ERISA violations is too speculative to give rise to Article III standing." *Id.*; *see Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 144 (2d Cir. 2021) (allegations that harm "will surely" happen based on events that "could" happen insufficient to establish a substantial risk of injury

---

[10] NAIC, *Summary of Findings and Determination, Bermuda Monetary Authority* (Oct. 7, 2019), https://content.naic.org/sites/default/files/inline-files/Bermuda%202019%20Re-Evaluation.pdf. Because the NAIC is governed by insurance regulators from all fifty states and D.C., and sets national standards for the insurance industry, its website is a reliable source of information and judicial notice is proper. *See Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127 n.1 (E.D.N.Y. 2022).

establishing standing).  Because any "injury to [Plaintiffs'] benefits is dependent on the realization

of several additional risks," their alleged "injury [is] too speculative to support standing."  *Lee v.*

*Verizon Comms., Inc.*, 837 F.3d 523, 546 (5th Cir. 2016).

### 2.    Even in the Event of Default, Plaintiffs Fail To Plausibly Plead A Substantial Risk Of Harm To *Their Benefits*.

Even if Plaintiffs could establish a substantial risk of Athene's default, they do not

adequately allege this would result in nonpayment of Plaintiffs' benefits—as they must do to

plausibly allege injury.  *See Thole*, 590 U.S. at 546 (plaintiffs must allege that plan would be

"unable to pay [Plaintiffs'] future pension benefits").  In addition to Athene Iowa and Athene New

York's general accounts, each Contract is backed by a separate account containing assets sufficient

to support the liabilities underlying the annuity contract.  *See* Ex. C § 1.2; Ex. D § 1.2.  These

assets were transferred to the separate account upon the purchase of the Contract, meaning that

Plaintiffs' benefits payments were fully funded from day one.  *See* Ex. C § 1.2; Ex. D § 1.2.  In

the event of insolvency, the assets in the separate account are available *only* to group annuity

contracts supported by the account.  *See* Ex. C § 1.2; Ex. D § 1.2.  Plaintiffs do not allege that the

separate accounts of either Athene Iowa or Athene New York are underfunded or would be

insufficient should either Athene entity become insolvent.  Indeed, Plaintiffs acknowledge that

assets from the separate accounts may be transferred to Athene's general accounts *only* when the

separate account is fully funded and its assets exceed its liabilities.  Compl. ¶ 134.[11]

Plaintiffs further acknowledge that, when an insurer fails, SGAs protect retirees' benefits.

*Id.* ¶¶ 67, 69; *see also, e.g.*, 29 C.F.R. § 4041.27(b)(3)(ii) ("[A]ll states, the District of Columbia,

---

[11] Although Plaintiffs suggest that the separate accounts are "not truly 'ring-fenced'" because each separate account supports multiple group annuity contracts, Compl. ¶ 134, this does not change the fact that the separate account is a separate source of funding in addition to the insurer's general account—one that is fully funded and shielded from the insurer's general account creditors.

and the Commonwealth of Puerto Rico have established 'guaranty associations' to protect policy holders in the event of an insurance company's financial failure.").  The Complaint alleges that the limit on state guaranty coverage "in most states" is $250,000 and that "a pensioner could exhaust [the limit] in mere years," Compl. ¶ 69, but they make no allegation that the named Plaintiffs in this case have benefits that would exceed whatever applicable state guaranty limits would be in place at the time of Athene's insolvency.  While Plaintiffs contend that "in some states, including California, annuitants automatically lose 20% of their benefits when their insurer becomes insolvent," *id.*, Plaintiffs do not plausibly establish that their coverage would come from California's SGA (or from any specific state) in the event of a default.  Plaintiffs would be covered by the SGA "for the state where [they] live[] at the time the insurance company fails to pay," 29 C.F.R. § 4041.27, and without allegations specifying *when* Athene will fail, any claim that Plaintiffs necessarily would be covered by any specific state's SGA is entirely speculative.  *See Volino v. Progressive Cas. Ins. Co.*, 2024 WL 1251185, at *3 (S.D.N.Y. Mar. 22, 2024) ("[T]he possibility that a plaintiff may someday be" injured and insured under the "same or a similar policy" was "too contingent to constitute a substantial likelihood of future injury").

The Complaint also fails to identify which Athene entity's failure would create a risk of harm to each Plaintiff.  Plaintiffs allege that their pension benefits were each transferred to either Athene Iowa and Athene New York—but then quickly collapse these entities together and refer to them collectively as "Athene."  Compl. ¶ 3.  The Complaint acknowledges that these companies are distinct corporate entities and makes no allegations the corporate form should be ignored.  *See Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002) ("[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities.").

### C.    Plaintiffs Lack Standing To Pursue Claims Under Section 1132(a)(2).

Plaintiffs' claims under Section 1132(a)(2) also fail for lack of Article III standing because they do not allege any harm *to the Plan*.  To bring a claim under Section 1132(a)(2), a plaintiff must allege harm to an employee benefit plan as a whole and may only seek to recover for "losses to the plan." 29 U.S.C. § 1109; *see id.* § 1132(a)(2).  As the Supreme Court has observed, reviewing "ERISA as a whole confirm[s] that [§§ 1132(a)(2) and 1109] protect 'the financial integrity of the *plan*.'" *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008) (emphasis added) (cleaned up).  Here, Plaintiffs fail to allege that the selection of Athene injured *the Plan*.  For this addition reason, their claim under 29 U.S.C. § 1132(a)(2) should be dismissed.

## II.    Plaintiffs Lack Statutory Standing To Pursue Claims Under Sections 1132(a)(2) and (a)(3).

Plaintiffs' claims under 29 U.S.C. §§ 1132(a)(2) and (a)(3) also should be dismissed because plaintiffs are *former*, not current, plan participants.

ERISA is a "comprehensive and reticulated statute" with "carefully integrated civil enforcement provisions." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251-52 (1993).  Section 1132(a) "demonstrates Congress' care in delineating the universe of *plaintiffs* who may bright certain civil actions." *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238, 247 (2000) (emphasis in original).  And "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974); *see also Harris Trust*, 530 U.S. at 247 ("ERISA's comprehensive and reticulated scheme warrants a cautious approach to inferring remedies not expressly authorized by the text." (citation omitted)).

Here, Congress has determined that former plan members may bring suit under Section 1132(a)(9) to ensure their benefits are secure, but it has *not* permitted former plan members to sue

under Sections 1132(a)(2) and (3).  *See Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *31 (S.D. Fla. Aug. 10, 2007) (after purchase of annuity contract, former participants are not treated as participants for purposes of bringing claims under Section 1132(a)).  By their own admission, Plaintiffs are all *former* participants of BMS's Plan.  Compl. ¶¶ 38-39.  Consequently, their claims cannot proceed to the extent they are brought under Sections 1132(a)(2) and (a)(3).

## III.    Plaintiffs Fail To State A Claim Under ERISA.

### A.    The BMS Defendants Have Not Breached Any Fiduciary Duties (Count I).

Count I alleges breaches of fiduciary duties in connection with the selection of Athene, as well as breaches by BMS of its duty to monitor State Street.  That count should be dismissed as to the BMS Defendants because (1) pursuing a PRT is not a fiduciary act, (2) the BMS Defendants did not select Athene as the insurer, and (3) the Complaint does not plausibly allege that the BMS Defendants failed properly to monitor State Street.

### 1.    Pursuing A PRT Is Not A Fiduciary Function.

While the Complaint makes plain Plaintiffs' preference that their benefits continue to be paid by the Plan, the law is clear that an employer may voluntarily terminate a pension plan and that the decision to do so is not subject to fiduciary duties.

Not every decision an employer makes about its plan is a fiduciary one.  *See Pegram*, 530 U.S. at 225 ("Employers … can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (e.g., … as plan sponsors).").  Instead, ERISA imposes fiduciary duties only on those who act "in the capacity of manager, administrator, or financial adviser to a 'plan.'"  *Id.* at 222.  Courts have explained that "an employer may, at different times, wear hats as both a sponsor and administrator," and "fiduciary duties under ERISA are implicated only when it acts in the latter capacity."  *Lee*, 837 F.3d at 535 (first quoting *Pegram*, 530 U.S. at 225-26, then quoting *Beck*, 551 U.S. at 101).  So when a plaintiff alleges breach of an

ERISA fiduciary duty, the court first asks whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to [the] complaint." *Pegram*, 530 U.S. at 226.

The answer to that threshold question here is plainly no. Plaintiffs devote much of their Complaint to their general dissatisfaction with PRTs. Compl. ¶¶ 61-97. However, "ERISA allows employers to terminate their pension plans voluntarily." *Beck*, 551 U.S. at 99. And an "employer's decision *whether* to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations." *Id.* at 101. Because the decision to terminate a pension plan via a PRT is a settlor, not a fiduciary, decision, no fiduciary obligations attach to BMS's decision to pursue a PRT.

### 2.    The BMS Defendants Did Not Select Athene.

While Plaintiffs seek to hold the BMS Defendants liable for breach of fiduciary duty in connection with the selection of Athene, that claim fails for the fundamental reason that the BMS Defendants did not exercise any discretionary authority with respect to that decision—State Street did.

ERISA defines a fiduciary in "*functional* terms of control and authority over the plan." *Mertens*, 508 U.S. 262. Thus, a person is an ERISA fiduciary "only 'to the extent'" that the person acts in such a capacity in relation to the plan. *Pegram*, 530 U.S. at 225-26. "While Plaintiffs are correct that the authority to select or supervise fiduciaries gives rise to fiduciary obligations, where an employer … has delegated the discretionary authority to manage a plan … and its *only* non-delegated authority relates to the ability to hire and fire [its delegates], the employer's fiduciary obligations extend *only* to those acts." *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 2015 WL 6437475, at *7 (S.D.N.Y. Oct. 16, 2015) (citation omitted).

Here, Plaintiffs concede that State Street was retained as the independent fiduciary to select the insurers. Compl. ¶¶ 43, 221. Accordingly, as a matter of law, the BMS Defendants cannot be

liable for breach of fiduciary duty in connection with Athene's selection.  *See Burke v. Boeing Co.*, 42 F.4th 716, 727-28 (7th Cir. 2022) (holding in-house committee and related defendants that delegated their fiduciary duties to an outside third party "cannot be liable for breaching fiduciary duties that they simply did not have"); *Indep. Ass'n of Publishers' Emps., Inc. v. Dow Jones & Co., Inc.*, 671 F. Supp. 1365, 1367 (S.D.N.Y. 1987) (dismissing claims against employer because "[n]owhere in the amended complaint is there a claim that [employer's] breach of its fiduciary obligations was with respect to its power" to select and retain administrator).

### 3. Plaintiffs Fail To Allege That BMS Breached Its Duty To Monitor State Street.

Plaintiffs' assertion in Count I that the BMS Defendants breached their fiduciary duty to monitor State Street likewise fails.

As a threshold matter, the failure to monitor claim fails because Plaintiffs "cannot maintain a claim for breach of the duty to monitor absent an underlying breach of the duties imposed under ERISA" by the other fiduciaries.  *Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (citation omitted).  Plaintiffs have failed to allege that State Street breached any of its fiduciary duties.  *See* State Street Brief Section II.  "Because Plaintiffs have failed to plausibly allege an underlying breach, the duty to monitor claim must be dismissed."  *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 343 (S.D.N.Y. 2024).

Further, even if Plaintiffs had adequately alleged that State Street breached its fiduciary duties, the failure to monitor theory fails because the Complaint contains no plausible allegations that the BMS Defendants breached any duty to monitor State Street's activities.  "The duty to monitor does not carry with it the duty to review [a] … fiduciary's every decision," because "to find otherwise would defeat the purpose of hiring … fiduciaries to run a benefit plan in the first place."  *Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 671 (W.D. Pa. 2019); *see Coyne & Delany Co.*

*v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996) ("the responsibility to monitor appointees" is not intended to "expose[] the appointing fiduciary to open-ended liability"). Rather, "a fiduciary's obligation to act is triggered when it has notice of the appointee's misconduct or has information available to it from which the misconduct would be apparent." *WPN Corp.*, 417 F. Supp. 3d at 671. The appointing fiduciary "is not exposed to liability unless something 'put them on notice of possible misadventure by their appointees.'" *Id.* (quoting *Coyne*, 98 F.3d at 1466 n.10).

Plaintiffs make no allegations that the BMS Defendants were "on notice" that State Street breached its fiduciary duties. Indeed, Plaintiffs do not allege any facts about the process State Street used to select Athene. Instead, they generally criticize Athene and conclude that "[h]ad the Bristol-Myers' Defendants fulfilled their fiduciary monitoring duties, Athene would have been rejected in favor of a safer annuity provider or the BMS Defendants would have decided not to proceed with the transaction." Compl. ¶ 270. Such bare bones allegations do not convert Plaintiffs' conclusory assertion that "[t]he Bristol-Myers Defendants are … liable for failing to monitor State Street" into a plausible factual allegation. *See Nicolas v. The Trustees of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (dismissing monitoring claims because plaintiff's claim "reads like legal conclusions as opposed to factual allegations; Plaintiff does not allege facts about Defendant's actual monitoring process and its specific shortcomings"); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2016 WL 6803768, at *5 (C.D. Cal. Apr. 18, 2016) (dismissing claims because "Plaintiffs allege no facts regarding whether, when, and to what extent Defendants monitored either the … Trust or other Defendants"); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023-24 (N.D. Ill. 2009) ("Plaintiffs allege only in the most general terms that [the Board] breached their duty to monitor … Without more, Plaintiffs' allegations that the Board breached its duty to monitor … fails *Twombly*'s plausibility requirement.").

**B.    BMS Did Not Breach Any Fiduciary Duties By Selecting State Street (Count III).**

Count III should be dismissed because the Complaint fails to allege any facts plausibly suggesting that the BMS Defendants breached their fiduciary duties by appointing State Street.

"In evaluating whether a fiduciary has acted prudently, [courts] … focus on the process by which it makes its decisions rather than the results of those decisions." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). "[W]here a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to reasonably infer the process was flawed." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent's Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).

Here, Plaintiffs seek to bring a breach of fiduciary duty claim against the BMS Defendants for the decision to hire State Street as an independent fiduciary. Compl. ¶ 279. But the Complaint is devoid of any factual allegations that the BMS Defendants breached their fiduciary obligations with respect to the selection of State Street. For instance, there is no allegation that the process the Pension Committee used to consider State Street was in any way deficient. This omission is fatal. *Dow Jones*, 671 F. Supp. at 1367 (dismissing claims where "[n]owhere in the amended complaint is there a claim that Dow Jones' breach of its fiduciary obligations was with respect to its power to appoint and remove" plan administrators).

**C.    Plaintiffs Fail To State A Claim Based On Nonfiduciary Liability (Count II).**

In Count II, Plaintiffs assert that ERISA "imposes liability on nonfiduciaries who knowingly participate in a fiduciary breach." Compl. ¶ 274 (citing 29 U.S.C. §§ 1132(a)(3), (a)(9)). Plaintiffs' attempt to impose nonfiduciary liability on the BMS Defendants fails because

the statutory provisions on which they rely do not authorize suit against nonfiduciaries charged with participating in a fiduciary breach.

In *Mertens*, the Supreme Court considered whether "a nonfiduciary who knowingly participates in the breach of a fiduciary duty" may be liable under Section 1132(a)(3). 508 U.S. at 249-50.[12]  Observing that "no provision [of ERISA] explicitly requires [nonfiduciaries] to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty," *id.* at 253-54, the Court "expressed considerable doubt that section [1132(a)(3)] authorizes suits against nonfiduciaries who participate in fiduciary breaches," *Reich v. Compton*, 57 F.3d 270, 282 (3d Cir. 1995); *see also Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003).

*Harris Trust* does not alter this conclusion.  There, the Supreme Court held that held that liability under Section 1132(a)(3) "extends to a suit against a nonfiduciary 'party in interest' *to a [prohibited] transaction*."  *Harris Trust*, 530 U.S. at 241 (emphasis added).  As courts have recognized, however, *Harris Trust* is limited to the prohibited transaction context.  It does not alter the Supreme Court's prior conclusion that ERISA "does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach."  *Renfro*, 671 F.3d at 325 & n.6 (citing *Harris Trust* and recognizing that 29 U.S.C. § 1132(a)(3) "authorized suits for nonfiduciary participation by parties in interest to transactions prohibited under ERISA").  Plaintiffs' attempt to impose liability on the BMS Defendants as a knowing participant in State Street's alleged breaches of fiduciary duty therefore fails as a matter of law.

Even if the court determines that standard articulated in *Harris Trust* applied here (and it should not), Count II would still fail.  In *Harris Trust*, the Court held that ERISA permits claims

---

[12] Like Section 1132(a)(3), Section 1132(a)(9) authorizes "appropriate relief."  Accordingly, the same analysis should apply to claims under both provisions.

against nonfiduciaries involved in prohibited transactions *only* if a plaintiff can "demonstrate[]" that the nonfiduciary "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251. And the Court made clear that, to satisfy this standard, the nonfiduciary must enter into the transaction with knowledge that the plan fiduciary was knowingly violating ERISA by engaging in the transaction. *See id.*

Here, Plaintiffs have failed to allege facts suggesting that the BMS Defendants had "actual or constructive knowledge of the facts satisfying the elements" of States Street's supposed fiduciary breach, yet still continued with the PRT transactions.[13] *Harris Trust*, 530 U.S. at 251. While Plaintiffs nakedly assert that the BMS Defendants "knew that State Street's investigation of available annuity providers could not be objective or sufficiently thorough," Compl. ¶ 276, there are no factual allegations supporting that conclusion. In short, the Complaint does not contain any factual allegations plausibly suggesting that the BMS Defendants knew of facts rendering the PRT unlawful, and therefore Count II should be dismissed.

### D.    Plaintiffs' Prohibited Transaction Claims (Counts IV, V & VIII) Fail.

In Counts IV, V and VIII, Plaintiffs fail to state prohibited transaction claims against BMS.

**Count V.** Plaintiffs assert that engaging in a PRT with Athene constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1). That claim fails because Plaintiffs offer no plausible, non-conclusory allegation that Athene provided services to the Plans. Section 1106 prohibits certain transactions between plan fiduciaries and a "party in interest." 29 U.S.C. § 1106(a)(1)(C). A "party in interest" is defined in relevant part to include any person "providing

---

[13] In fact, the Complaint also fails to allege a breach of fiduciary duty on the part of State Street. *See* State Street Brief Section II. This represents yet another basis for the Court to dismiss Count II: because there was no breach, the BMS Defendants could not have knowingly participated in a breach.

services to [a] plan." *See* 29 U.S.C. § 1002(14)(A). Notably, sellers of goods are *not* parties in interest. *See id.*

Athene is not a party in interest. Plaintiffs allege that Athene sold annuity contracts to the BMS Defendants. Compl. ¶ 185. The sale of an annuity contract is not the provision of a service but a sale of a good, which falls outside the scope of ERISA's prohibited transaction statute. *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("[A]nnuities are widely recognized as … investment products." (citation omitted)); DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ("[T]he sale by an insurance company of a group insurance policy to an employer to fund an employee benefit plan would not alone cause the insurance company to become a party in interest to the plan."). Because Athene is not a "party in interest" by virtue of its sale of annuity contracts or otherwise, Section 1106(a)(1)(C) does not apply. *See Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018) ("Congress drew a distinction between prohibiting certain transactions with anyone, and prohibiting those transactions with a party in interest."); *Marshall v. Carroll*, 1980 U.S. Dist. LEXIS 17767, at *27 (N.D. Cal. Apr. 18, 1980) ("[T]he fact that an insurance company provides insurance to a plan does not transform it into a party in interest within the meaning of [29 U.S.C. § 1002(14)(b)]."), *aff'd sub nom. Donovan v. Carroll*, 673 F.2d 1337 (9th Cir. 1982).

Even if Section 1106 were to apply, ERISA "exempts certain transactions from the categorical bars imposed by Section 1106." *Bloom*, 725 F. Supp. 3d at 344. Section 1108, which "is expressly referenced in the text of § 1106(a), … provides certain exemptions from prohibited transactions." *Id.* (cleaned up). Section 1108(b)(2) exempts transactions with service providers if there is a "reasonable arrangement" resulting in "no more than reasonable compensation." Section 1108(b)(17) exempts transactions where the plan pays "adequate consideration," or "the fair

market value of the asset as determined in good faith by a fiduciary." The DOL's Prohibited Transaction Exemption 84-24 further exempts transactions involving "[t]he purchase, with plan assets, of an insurance or annuity contract from an insurance company" where "no more than reasonable compensation is paid." 71 Fed. Reg. 5887, 5889 (Feb. 3, 2006). As such, to state a claim, the "complaint must plausibly allege that a fiduciary has caused the plan to engage in a transaction that constitutes the 'furnishing of services between the plan and a party in interest' *where that transaction was unnecessary or involved unreasonable compensation*." *Cunningham*, 86 F.4th at 975 (quoting 29 U.S.C. § 1106(a)(1)(C)) (emphasis in original).

Here, Plaintiffs suggest that Athene was, in fact, the lowest-cost annuity provider. Compl. ¶ 199. Accordingly, even if Plaintiffs had sufficiently alleged that a transaction with a service provider occurred, the transaction would be exempt from liability under Section 1108, and would not constitute a violation of ERISA.

**Count IV.** Plaintiffs assert that engaging State Street constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(C). As noted, however, "to plead a violation of § 1106(a)(1)(C), a complaint must plausibly allege that a fiduciary has caused the plan to engage in a transaction that constitutes the 'furnishing of ... services ... between the plan and a party in interest' where that transaction was unnecessary or involved unreasonable compensation." *Cunningham*, 86 F.4th at 975. While Plaintiffs make the conclusory allegation that "*[n]o amount of compensation*" paid to State Street was reasonable, Compl. ¶ 290, that allegation is both unsupported and implausible.[14] Count IV should be dismissed.

---

[14] Plaintiffs also do not allege that State Street was a service provider at the time it was retained as an independent fiduciary. *See Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) ("some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106").

**Count VIII.**  Plaintiffs assert that BMS engaged in self-dealing in violation of 29 U.S.C. Section 1106(b) by selecting Athene for the PRT.  Compl. ¶ 203.  This claim should be dismissed because the BMS Defendants did not act as a fiduciary with respect to the selection of Athene. *Supra* Section III.A.2.  This fact is fatal to Plaintiffs' claim because "[f]iduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001).  Furthermore, to the extent Plaintiffs suggest that receipt of surplus assets following a plan termination constitutes self-dealing, that is patently incorrect.  ERISA expressly permits employers to receive surplus assets following a plan termination.  *See* 29 U.S.C. § 1104(d); 29 U.S.C. § 1344(d)(1)); *Beck*, 551 U.S. at 107 ("[I]n a standard termination[,] ERISA allows the employer to (under certain circumstances) recoup surplus funds.").  Plaintiffs make no allegations that any distribution of surplus violated Section 1344.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' claims against the BMS Defendants.

Dated: January 15, 2025

Respectfully submitted,

*/s/ Laura Flahive Wu*

Laura Flahive Wu
Robert Newman
Christian J. Pistilli
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
lflahivewu@cov.com

*Counsel for Defendants Bristol-Myers Squibb Co., Bristol-Myers Squibb Company Pension Committee, and Bristol-Myers Squibb Compensation and Management Development Committee*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this Memorandum of Law complies with the length restrictions in Local Civil Rule 7.1(c) because it contains 8,726 words, as counted by the Microsoft Word-processing program used to prepare this document. This word count excludes the caption, table of contents, table of authorities, signature blocks, and this certificate as provided for by Local Civil Rule 7.1(c).

*/s/ Laura Flahive Wu*
Laura Flahive Wu
